HOME MIXTURE GUANO CO. v. OCEAN ACCIDENT & GUARANTEE CORPORATION, LIMITED, OF LONDON, ENGLAND.

(Circuit Court, N. D. Georgia. February 18, 1910.)

1. INSURANCE (§ 435*)—EMPLOYER'S INDEMNITY POLICY—CONSTRUCTION—"CONSTRUCTION, DEMOLITION, OR EXTRAORDINARY REPAIRS"—"ORDINARY REPAIRS."

A large part of plaintiff's factory having been destroyed, it was engaged in rebuilding the same, and, in connection therewith, was rebuilding an acid chamber, required to be lined with lead. In the course of this work, one of plaintiff's employés, while engaged in unrolling the lead, fell from a scaffold and received injuries for which he recovered damages from plaintiff. *Held*, that such work was not "ordinary repairs," but "construction, demolition, or extraordinary repairs," within the exception of an employer's liability policy excepting injuries to persons occurring in the construction, demolition, or in making extraordinary repairs to structures, buildings, or plants.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 435.*

For other definitions, see Words and Phrases, vol. 6, p. 5049; vol. 8, p. 7740.]

2. INSURANCE (§ 146*)—INDEMNITY POLICY—CONSTRUCTION.

An employer's liability policy, and the exceptions therein contained, must be construed most strongly against the insurer.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 295; Dec. Dig. § 146.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep't Indexes

**3. INSURANCE (§ 154\*)—RIDERS—PRIOR ACCIDENTS.**

That the insurer placed a rider on plaintiff's liability policy providing that the policy should not cover any operations in connection with the relining, repairing, or constructing of acid vaults, except on written notification to and written acceptance thereof by the insurer, did not warrant a conclusion that the parties construed the policy to cover a prior accident to one of plaintiff's employés while engaged in relining an acid chamber in the course of extraordinary repairs expressly excepted from the policy.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 154.\*]

Action by the Home Mixture Guano Company against the Ocean Accident & Guarantee Corporation, Limited, of London, England. On demurrer to declaration. Sustained.

S. B. Hatcher and T. T. Miller, for plaintiff.

Rosser & Brandon, for defendant.

NEWMAN, District Judge. The present hearing in this case is on a demurrer to the declaration. The suit is on a policy of insurance issued by the defendant company, to the plaintiff company, in which the former agrees to indemnify the latter during a period of 12 calendar months, from February 9, 1906, to February 9, 1907, against loss of common-law or statutory liability, for damage on account of bodily injuries, fatal or nonfatal, accidentally suffered while this policy is in force, by any employé or employés of the guano company, while on duty at the place, and in the occupations, and within the factories, shop, or yard of the guano company. The policy contains certain provisions as to payments for injuries to employés, and certain limitations on the same, and then provides that the liability in no case shall exceed $5,000. The policy further provides that, in case of suit brought against the assured to enforce a claim for damages covered by the policy, the assured shall immediately forward to the American head office of the indemnity company every summons or other process, as soon as the same shall have been served on him, and the corporation (the indemnity company) will, at its own costs, defend such suit in the name and on behalf of the assured, or settle the same. Then follows this allegation:

"Petitioner avers that in the early part of the year 1906 a fire burned and destroyed a portion of its manufacturing plant, being the acid chamber thereof, and, in order to manufacture fertilizers, it was necessary to rebuild said acid chambers. It says that it contracted with an independent contractor and builder for the construction of the wooden building, in which the acid chamber was to be built; and, when this building was constructed, petitioner, with its employés, whose compensation is regularly included in the estimated pay roll, began the work of unrolling lead for lining the acid chamber, being an ordinary repair, necessary in connection with the work of manufacturing fertilizers. The burning of lead being also let out by contract to an independent contractor, and the only part of said work undertaken by plaintiff was the unrolling of the lead, which was an ordinary repair and in terms of said policy. That among said employés, engaged in unrolling said lead to cover the acid chamber was J. L. Womack, whose name was on the pay roll of assured, engaged in the operation of manufacturing fertilizers, and within the terms of the policy.

"Petitioner avers that defendant was advised of the character of the work it was doing, as will appear by letter received by it from defendant, under

date of July 21, 1906, and the petitioners reply thereto, under date of July 24, 1906, copies of such letters attached. And that said defendant raised no objection thereto, at the time, nor did it intimate until September 6, 1906, that the work in which plaintiff's employés were engaged was not within the terms of said policy; and not until after said J. L. Womack and other employés had been injured by the fall of the scaffolding used in unrolling lead to cover the acid chamber. Copy of the letter of September 6, 1906, attached. Petitioner avers that on the 6th day of August, 1906, said J. L. Womack, an employé of petitioner, was engaged at work upon a scaffold, in unrolling lead, necessary for the lining of its acid chamber, when said scaffold broke, causing said Womack to fall to the floor, and he was accidentally injured thereby, from which he lost a leg, and the other leg was badly injured, and his back was injured, being permanently injured."

It is then averred that, in compliance with the conditions of said policy, plaintiff gave immediate written notice of said accident to the defendant, and that on the 8th day of November, 1906, rendered a hospital bill and doctor's bill for services and attention to said J. L. Womack, caused by his injuries. It is then alleged that in July, 1907, Womack brought suit in the city court of Columbus for the injuries sustained by the falling scaffold, as stated, and that plaintiff mailed to the indemnity company a copy of the subpœnas served upon them, and that the indemnity company refused to settle the damage, and failed and refused to engage counsel to represent plaintiff in the action.

The suit was tried in January, 1910, and resulted in a verdict for $5,000, and $50 costs of court, which execution issued against the guano company, which they fully paid and settled on the 18th day of January, 1909.

Plaintiff then alleges that it is entitled to recover from the indemnity company $10,000, or other large sum, also $1,000 attorney's fees, for defending the suit brought by J. L. Womack, and also $100 for medical and surgical attention to Womack on account of his injuries.

There is in the policy of insurance, as shown by the declaration, the following provision:

"This policy does not cover loss from liability for injuries to, or caused wholly, or in part by: * * * (e) Any person connected with the making of additions to, or alterations in, any structure, building or plant, or in connection with the construction, demolition, or extraordinary repairs thereof; but ordinary repairs when made on the premises mentioned in said schedule by employés whose compensation is regularly included in the estimated pay roll, are permitted."

Paragraph 13 of what is called "the schedule" contains this provision:

"The employés whose compensation is included in the foregoing list, are not employed in the making of alterations in, or additions to, structures, buildings or plants, nor in connection with the construction, demolition, or extraordinary repairs thereof."

There is a demurrer to the declaration on the ground that there is no cause of action set out in this declaration. The declaration also is specially demurred to upon several grounds.

The precise question for determination here is whether J. L. Womack, the person injured at the time he was so injured, was engaged in work which is covered by the policy of indemnity which was issued to the plaintiff by the defendant company. The declaration says, as will be seen above:

"That in the early part of the year 1906 a fire burned and destroyed a portion of its manufacturing plant, being the acid chamber thereof, and, in order to manufacture fertilizers, it was necessary to rebuild said acid chamber."

It was then alleged that after the wooden building was erected it became necessary to line the same with the lead to prepare it as an acid chamber, and Womack, who was on the pay roll, as a regular employé of the guano company, was engaged in unrolling the lead to be used in lining the chamber.

Was this work such that, injury occurring, the indemnity company would be liable to the plaintiff, in view of the exceptions contained in the policy, which have been quoted above, and the provision of paragraph 13 of the schedule?

The argument here is that although the building containing the acid chamber was destroyed by fire, and the same had been rebuilt, and was being relined, inasmuch as relining would be an ordinary repair, and it was being done by regular employés of the guano company, it does not come within the exception stated in the policy.

Persons engaged in connection with "construction, demolition, or extraordinary repairs" are not covered. Persons engaged in "ordinary repairs," when made on the premises mentioned in the schedule, by employés whose compensation is regularly included in the company's pay roll, are covered. It is contended here, and the contention is unquestionably sound, that this policy should be construed most strongly against the indemnity company, and the exceptions in the policy construed as against the company; but, construing the policy in this way, can it be said to cover the person injured in the work in which Womack was engaged, at the time he was injured, although he was on the regular pay roll of the company? For some reason best known to the indemnity company, it saw fit to make an exception in its policy as to employés engaged in "construction, demolition, or extraordinary repairs," and the guano company assented to this in the schedule.

While it is true that the indemnity company would probably have been liable had Womack been simply engaged as an employé of the company, and on its pay roll, in assisting in relining the acid chamber, that being all, yet, in view of the fact that the building in which the acid chamber was contained was completely destroyed, and was being rebuilt, is there any such liability?

It is perfectly clear from the petition, and from the letters of the plaintiff company attached to the petition, that a large part of its manufacturing plant was destroyed, and that it was engaged in rebuilding the same. That portion of the plant, undoubtedly, in which the acid chamber was placed, was being rebuilt. Therefore the contention is that what Womack was doing at the time of his injuries was not repair work at all, but was extraordinary construction work. If the building and the acid chamber were destroyed, and the whole were being rebuilt, it could hardly be called repairing the acid chamber.

It is urged for the plaintiff that a case is made which should go to a jury to determine whether or not this was ordinary repair work. If there was any doubt about the proper construction of this contract, or if any questions of fact were involved, this would be true. But

there is no difficulty from the terms of this policy and from the facts stated in the declaration and exhibits as to what was being done, and in applying the same to the facts stated. If it was construction work, or extraordinary repairs in which J. L. Womack was assisting, his injuries are not covered by the policy. If ordinary repairs, it is covered by the policy. To say that where a large part of a manufacturing plant is burned, and is being rebuilt, and an entirely new acid chamber put in, is ordinary repair work, is not possible, giving the most extreme construction to this policy against the indemnity company and in favor of the guano company.

In the case of Wheeler v. Fidelity & Casualty Company, 129 Ga. 240, 58 S. E. 710, Judge Cobb, speaking for the Supreme Court of Georgia, says this:

"While we recognize the rule that a policy of insurance must be construed most strongly against the insurer, still the words of the policy must be given the meaning which they ordinarily bear; and, where it is manifest that it was the intention of the insurer that liability should attach only in given circumstances, the law will uphold the contract according to its true intent and import. We do not think there is any ambiguity whatever in the clause of the policy providing for indemnity resulting from death or disability of the beneficiary. Nor do we think that there is any stipulation in the policy which can be properly held to vary or alter the plain and evident meaning of the terms in this clause. The writing being unambiguous, parol evidence as to what was said by the parties at the time it was executed will not be admitted to vary or alter the terms of the writing. The petition set forth no cause of action, and was properly dismissed on demurrer."

Other authorities might be quoted to the same effect, but it is unnecessary.

It is said that the parties themselves construed this policy, and extended it, to cover an accident of this sort. The two letters which are attached to the policy, it is said, show this. One is from the indemnity company to the guano company, dated July 21, 1906, and the reply of the guano company to the indemnity company, dated July 24, 1906. This was with reference to accidents which had occurred prior thereto, to Henry Cheney and Doc. Williams. The first letter is as follows:

"July 21st, 1906.

"Home Mixture Guano Company, Columbus, Georgia—Gentlemen: * * * We have to-day received notice of accident to above employés (Cheney and Williams). From the particulars given in your report there does not appear to be any liability attaching to you for the occurrence of these accidents. We note that the injured employés were engaged in rebuilding acid chambers. Kindly let us know the nature and extent of any alterations and repairs that you are now engaged in at your plant. Are you doing anything except relining acid chambers? We wish that you would caution your superintendent in regard to using extra precaution against accidents while carrying on this work. It has been our experience for the last two or three years that in almost every instance where fertilizer plants have undertaken to reline their acid chambers, that a number of serious and fatal accidents have resulted, principally from the giving way of springing scaffold necessarily used in this kind of work. We recall one instance where a new manilla rope one and one-half inch in diameter broke, precipitating three men to the bottom of the acid chamber with serious results. We hope that you will give the necessary attention to this matter and see that any ropes used are carefully tested and not allowed to come into contact with acid.

"Yours truly,     The Ocean Accident and Guarantee Cor. Ltd.,
                    "[Signed]   C. B. Atkins, Dept. of Claims."

The reply of the guano company is as follows:

"Replying to your favor of the 21st, we are rebuilding our acid chambers from the burner rooms back, and our superintendent, who is a very reliable and careful man, is using all diligence and care to eliminate any chance of accident. Our tackle consisting of blocks, pulleys, etc., is in first-class shape, and our cables and ropes are brand new, and we trust to complete the work without having any serious accident."

Subsequently, on September 6, 1906, C. B. Atkins, representative of the indemnity company, wrote the guano company with reference to the accident of August 6th, in which Womack and others were injured, that upon investigation the indemnity company found that this accident occurred while Womack was engaged in the construction of a large new building, including acid chambers, acid towers, etc., and then proceeds to state that this accident does not come under the terms of the policy which has been referred to above.

The claim is, however, that the letters of July 21, and July 24, 1906, show that the parties construed this contract as applying to the character of the work in which Womack was engaged. This claim does not seem sound. On the contrary, it appears in the letter of C. B. Atkins, dated July 21, 1906, that he asks to know the nature and character of the repairs, and whether they were doing anything except to reline the acid chamber. Assuming the information of the indemnity company to be such as indicated by the letter to Atkins, he knew nothing of the character of the work being done. It could hardly be said that any statements made by him and any requests as to care in doing work connected with lining the acid chamber could be taken as an admission of liability, unless he knew what the real facts were at the time he wrote. These letters do not appear to strengthen the plaintiff's case in any way whatever.

It is next urged that a rider which was placed on the policy in October, 1906, indicated that work such as Womack was doing at the time of his injury was covered by this policy. The rider is as follows:

"It is understood and agreed that the undermentioned policy subject in all respects to its conditions, agreements and limitations, does not cover any operations in connection with the relining, repairing or construction of acid vats, except upon written notification to, and written acceptance thereof by the corporation."

It is impossible to see how this rider can in any way affect this contract as applied to the accident to J. L. Womack in August. It seems that the indemnity company, for reasons satisfactory, desired to relieve itself from all possible liability from accidents occurring in the relining or construction of acid vats. It would seem that the purpose of placing this rider on the policy was to prevent all possible doubt on the question of liability thereafter. This is the most that it seems can be said about this rider.

The meaning of this policy seems to be quite plain, and even the most strained construction could not make it cover the accident to J. L. Womack, under the circumstances surrounding its occurrence, and in view of what was being done at the guano company's plant, at the time of his injury.

The demurrer to the declaration must be sustained.