KINSTON COTTON MILLS v. LIABILITY ASSURANCE CORPORATION.

(Filed 19 March, 1913.)

1. Insurance — Employer and Employee — Indemnity—Cost of Defending Suit.

A provision in a policy indemnifying an employer, that the company "will at its own cost defend suits in the name and behalf of the insured" for injuries to an employee covered by the policy, renders the insured liable for reasonable expense incurred by the employer in defending a suit contemplated by the policy, wherein he was successful and unable to recover the costs under an insolvent prosecution bond.

2. Insurance—Indemnity—Structural Alterations—Ordinary Alterations—Interpretation of Policy—Words and Phrases.

Where a policy of indemnity insures an employer against "damages on account of bodily injury" to an employee, "including death," and in express terms excludes injury or death caused to "any person in connection with the making of additions to or structural alterations in, . . . any building or plant," by the term "structural alteration" is meant such as would change the physical structure of the plant, and not such as would be an "ordinary alteration or repair," and in this case it is held that it was a question for the jury as to whether the substitution of a brick chimney for iron smokestacks was only an "ordinary alteration," and not excluded by the provision of the policy.

3. Same—Opinion—Evidence—Observation.

Upon the question of whether the substitution of a brick chimney for iron smokestacks at the plaintiff's plant was an ordinary alteration, it was competent for a witness of long experience in

such matters to testify, from his own observation, whether the alteration was an ordinary one, and not excluded from the policy of indemnity of the employer by the terms "structural alterations" therein used.

#### 4. Insurance—Indemnity—Employer and Employee—Ordinary Alterations.

The plaintiff contracted to have a brick chimney built to replace iron smokestacks used in its plant, and as a part of the consideration agreed to furnish sand from its own premises. While its employee was digging out the sand, it caved in on him, causing his death: *Held*, the employer was indemnified for the death of the employee under a policy wherein the insurer was made liable for the death of an employee, suffered "while within or upon the premises, etc., by reason of the operation of the trade or business . . . including the making of repairs and such ordinary alterations as are necessary to the care of the premises and plant, and their maintenance in good condition."

APPEAL by plaintiff from *Carter, J.,* at November Term, 1912, of LENOIR.

*Rouse & Land for plaintiffs.*
*Davis & Davis and K. O. Burgwyn for defendant.*

CLARK, C. J. This is an action on an insurance indemnity contract, for the recovery of $1,135 for expenses paid in defending a suit against the plaintiff, brought by Flanner, administrator of R. E. Hawkins, an employee of the plaintiff, on account of the alleged negligence of plaintiff causing the death of said Hawkins while at work in the employ of the plaintiff. Said indemnity policy contained a provision of insurance for liability "for damages on account of bodily injuries, including death, resulting therefrom, accidentally suffered by any employee of the assured while within or upon the premises or ways adjacent thereto, by reason of the operation of the trade or business described in the schedule, including the making of repairs and such ordinary alterations as are necessary to the care of the premises and plant and their maintenance in good condition."

The policy excludes liability for injury or death caused to "any person in connection with the making of additions to or

structural alterations in, or the construction of, any building or plant." There is also a provision that, "The corporation will at its own cost defend such suits (even if groundless) in the name and behalf of the assured." In this case the action by Flanner, administrator, was unsuccessful. The defendant admitted that the sum of $1,135 was paid out by the plaintiff in the proper and necessary defense of the action against it, and that this amount was a reasonable expense in the defense of the action. It was also admitted that the estate of Hawkins was insolvent, and that the plaintiff did not recover back any costs or expenses paid out by it in defending said action, and also that the plaintiff gave all notices required by the terms of the policy, its defense resting upon the ground that the injury was not one covered by the policy.

The evidence is that two iron smokestacks used by the plaintiff being unsatisfactory, the plaintiff contracted with an independent contractor to have a brick chimney erected to take the place of the two iron stacks. The plaintiff, however, contracted to furnish the sand, crushed rock, and the ordinary building brick. The plaintiff undertook to get the sand upon its own premises, and for said purpose R. E. Hawkins, who was a mill hand, was engaged, together with other employees, digging sand from a hole on plaintiff's premises, when he met his death by the caving in of the hole.

We think the court erred in refusing to permit the witness Taylor, who had twenty years experience in the cotton mill business, to state whether work of this character was the repair of, or an addition to, the mill plant. The evidence offered was not a mere matter of opinion, but the result of knowledge and observation by the witness. *Davenport v. R. R.,* 148 N. C., 287; *Ives v. Lumber Co.,* 147 N. C., 306; *Morrisett v. Cotton Mills,* 151 N. C., 33. It is true, the jury upon all the evidence could have drawn their own conclusion on this point. But the evidence of Taylor, if it had been admitted, would have been only a matter for consideration by them, and not conclusive.

The real point in the case is in regard to the correctness of the nonsuit ordered by the court, and upon this the evidence must be taken in the light most favorable to the plaintiff.

It is not clear that the employment in which Hawkins met his death was in the "making of an addition to, or structural alteration in, or in the construction of, any building or plant." It would seem he was simply a mill employee, digging sand on the premises of the plaintiff, for use in the "making of repairs and for such ordinary alterations as are necessary in the care of the premises and plant and their maintenance in good condition."

The erecting of a brick chimney in the place of the two iron stacks which had proven unsatisfactory may have been an alteration which was "necessary to the care of the premises and plant." It is true, the plaintiffs had engaged an independent contractor to erect the chimney, but besides paying him for his work, the plaintiff agreed to furnish the brick and the sand. To the latter end it took the sand off its own premises by the labor of its own employees. To that extent Hawkins was engaged in making an alteration which was necessary for the plant and its proper maintenance. The "structural alteration," which was excepted by the policy, would be such alteration as would change the physical structure of the building and plant. That was not done here by the erection of a brick chimney in the place of the two iron stacks, which would seem a mere incidental or ordinary alteration, necessary to the maintenance of the plant in good condition, and therefore within the terms of the policy. If so, it was an ordinary, and not an extraordinary alteration (which last required a special permit), and the plaintiff was engaged in making such alteration to the extent of digging sand therefor with its own employees.

At the least, there being a controversy whether the work of substituting one chimney for two was a "structural alteration," which was excluded by the terms of the policy, or an "ordinary alteration or repair," which was within its terms, the question should have been submitted to the jury as a mixed question of law and fact under proper instructions from the court and with the aid of the evidence of Taylor, which was improperly excluded.

The judgment of nonsuit is set aside.

Reversed.