CARRIE ROBINSON, Respondent, v. GLOBE INDEMNITY COMPANY, Appellant.

First Department, May 28, 1937.

*F. A. W. Ireland* of counsel [*Ireland & Cohen*, attorneys], for the appellant.

*Harry E. Kreindler* of counsel [*Philip A. Levey*], for the respondent.

MARTIN, P. J. The plaintiff sustained personal injuries on February 10, 1932, when the ceiling in her apartment in the premises of Cruickshank Holding Company at 356 West One Hundred and Nineteenth street, New York city, fell and struck her. She sued the owner and recovered a judgment for the sum of $5,179.25. The defendant herein had insured the premises in question but claimed that the accident to the plaintiff came within an exception contained in the policy and refused to pay the judgment. This action was then brought to recover the amount of the judgment obtained against the owner of the premises.

The policy which the defendant issued contained the provision that it should not apply to injuries " caused by or through work of making additions to, or structural alterations in, any building, structure, elevator, sidewalk or approach, or caused by any work of construction, excavation or demolition, or work of installation of mechanical equipment, but this exclusion does not apply to the making of ordinary alterations and repairs necessary to the care and maintenance of the said designated premises."

The defendant argues that the accident was caused by work of such a nature that under the above clause of the policy the defendant was not liable for the injuries.

There were two six-room apartments, known as " railroad flats," on the first floor of the building in question. The owners, through their architect, filed plans with the building department in January, 1932, for the alteration of the two six-room apartments so that each would be converted into two apartments of four and two rooms. This contemplated alteration made necessary the tearing out of closets and the installation of a bathroom in what formerly had been a passageway and closet, and changing of another room into a kitchen, the sealing of a door, the laying of a tile floor and the installation in the two-room apartments of the necessary kitchen and bathroom equipment consisting in this case of two bathtubs, two toilets, two wash basins for the bathroom and two kitchen ranges, two sinks, two washtubs and dish closets for the kitchens. In addition, it was necessary, in accordance with the

provisions of the health department, to install a vent in the two bathrooms to carry off foul air.

The carpentry work and plastering necessary to seal the doorway and convert the passageway into a bathroom had been completed and the apartment had been painted when, on the day of the accident, the plumbing contractor with two assistants came into the apartment to look the place over and to prepare it for the installation of the necessary kitchen and bathroom fixtures. One of the men employed by the plumber bored a hole in the flooring so that the lead bend for the toilet bowl could be placed therein at a future time. As a result of boring this hole the ceiling fell in a room in plaintiff's apartment (directly underneath the place where the hole was made), and she was injured.

The aforesaid alterations are not such as were ordinarily necessary to the care and maintenance of the premises. On the contrary, they were structural in character. The plumbing work and the plumbing fixtures to be installed in the bathrooms and the kitchens were integral parts of the conversion of each of the six-room apartments into a two- and a four-room apartment. That this was also the opinion of the owner of the premises and its architect is indicated by the fact that they filed a plan and detailed drawing of the proposed work pursuant to the provisions of section 3 of the Building Code of the City of New York (New York Code of Ordinances, chap. 5), subdivision 1 of which provides that " Before the construction or alteration of any building, wall or structure, or any part of either  *  *  *  and before the construction or alteration of the plumbing or drainage of any building, structure or premises is commenced, the owner or lessee, or agent of either, or the architect or builder employed by such owner or lessee in connection with the proposed construction or alteration, shall submit to the Superintendent of Buildings a detailed statement in triplicate of the specifications on appropriate blanks to be furnished to applicants by the Bureau of Buildings, and such plans and structural detailed drawings of the proposed work as the Superintendent of Buildings may require."

Subdivision 6 of the same section sets forth that " Ordinary repairs to buildings or structures, or to the plumbing and drainage thereof, may be made without notice to the Superintendent of Buildings, but such repairs shall not be construed to include the cutting away of any wall or any portion thereof, the removal or cutting of any beams or supports, or the removal, change or closing of any stairway or required means of exit, or the alteration of any house sewer, private sewer or drainage system, or the construction of any soil or waste pipe."

In *United States F. & G. Co.* v. *Southland Life Ins. Co.* (22 F. [2d] 731), the court said: " As the evidence without conflict showed that the fifth floor of the insured's building, as it was before the above-mentioned changes were made, was in good condition and needed no repairs, and that those changes were made, not because they were necessary to the care of the premises and their maintenance in good condition, but for the purpose of making that floor suitable for uses different from those to which previously it was put, there seems to be no substantial basis for a contention that, in the absence of the granting of the prescribed permit, the insurer was liable under the policy for a death caused by a person engaged in making those alterations. Furthermore, we are of opinion that the above-mentioned changes in the fifth floor of the building involved ' the making of alterations or additions of a structural character ' within the meaning of the provision in question."

The work in question thus came within the exceptions of the policy which provided that the defendant was not to be liable for injuries caused by making " structural alterations," " additions," " work of construction " and " work of installation of mechanical equipment." The changes being made in the premises insured were not trivial in nature, but were substantial and required the services of an architect and the filing of plans. The work involved carpentry, plastering, painting and plumbing and effected a complete change in the layout of the two first-floor apartments in the building insured by the defendant.

The judgment should be reversed, with costs, and the complaint dismissed, with costs.

O'MALLEY, DORE, COHN and CALLAHAN, JJ., concur.

Judgment unanimously reversed, with costs, and the complaint dismissed, with costs.