**HARDWARE MUT. CASUALTY CO. v. HILDERBRANDT.**

No. 1985.

Circuit Court of Appeals, Tenth Circuit.

Sept. 16, 1940.

On Rehearing Jan. 13, 1941.

Second Petition for Rehearing Denied April 14, 1941.

292

PHILLIPS, Circuit Judge, dissenting.

James C. Cheek, of Oklahoma City, Okl., and Lowell White, of Denver, Colo., for appellant.

J. B. Dudley, of Oklahoma City, Okl. (Paul Dudley and Dudley, Hyde, Duvall & Dudley, all of Oklahoma City, Okl., on the brief), for appellee.

Before PHILLIPS, BRATTON, and WILLIAMS, Circuit Judges.

PHILLIPS, Circuit Judge.

The Hardware Mutual Casualty Company[1] brought this action against G. W. Hilderbrandt, C. S. Humphrey, J. C. Thompson, and Mildred Gilbert, administratrix of the estate of H. C. Gilbert, deceased, seeking a declaratory judgment determining its liability under an insurance policy.

The facts as disclosed by the findings of the trial court, which are supported by substantial evidence, are not clearly erroneous, and are therefore binding on this court,[2] are these:

---

[1] Hereinafter referred to as the Casualty Company.

[2] See F. W. Fitch Co. v. Camille, Inc., 8 Cir., 106 F.2d 635, 638; Cherry-Burrell Co. v. Thatcher, 9 Cir., 107 F.2d 65, 69.

During the year 1937, Hilderbrandt was the owner of certain lots located in Oklahoma City, Oklahoma, and an apartment hotel situated thereon. The hotel was operated by Humphrey under a month-to-month lease.

On January 13, 1937, the Casualty Company issued its policy of liability insurance to Hilderbrandt for a term of one year from January 5, 1937, insuring Hilderbrandt against liability imposed by law for damages for death or bodily injuries accidentally sustained on the hotel premises by any person or persons other than employees of Hilderbrandt.

The policy provided:

"II. The Company further agrees: * * 2. To defend in his name and behalf any suit against the Assured seeking damages on account of such injury, even if such suit is groundless, false, or fraudulent; * *".

On and prior to December 1, 1937, the hotel was equipped with a steam heating plant consisting of a boiler in the basement, radiators in the rooms, and steam pipes leading from the boiler to the radiators. About December 1, 1937, it became necessary to install a new boiler for the steam plant. Humphrey ascertained that it would take about a week to secure a new boiler. Believing that a gas heating system could be installed more quickly than a new boiler, Humphrey sought the consent of Hilderbrandt to install such a system. Hilderbrandt agreed that Humphrey might install the gas heating system, advance the cost thereof and deduct such cost from future rentals. On December 2, 1937, Humphrey entered into an oral contract with Thompson, a licensed plumber, whereby the latter agreed to install the gas system at the cost of materials, supplies and labor, plus ten per cent of the cost thereof. After talking with Thompson, Humphrey decided to use the old steam pipes instead of gas pipes in order to save expense and secure heat for the hotel more quickly. Humphrey secured a temporary permit from the city inspector to install the gas system, using the old steam pipes. Under the contract, Thompson was to have full and complete charge of the method and manner of work. He employed H. C. Gilbert and other workmen to install the gas system. The contract contemplated the disconnecting of the steam pipes from the boiler in the basement, repair of any leaks in the pipes, their connection with a gas supply, the installation of gas stoves in the rooms, the removal of the radiators, and the connection of the steam pipes with the gas stoves.

On the evening of December 3, 1937, while Thompson and Gilbert were examining a gas leak in one of the pipes in a room on the second floor of the hotel, an explosion occurred in the room resulting in serious injuries to Gilbert and Thompson. On December 9, 1937, Gilbert died as the result of the injuries. Mildred Gilbert, the surviving wife of Gilbert, was appointed administratrix of his estate and on December 23, 1937, as such administratrix, she commenced an action in the District Court of Oklahoma County, Oklahoma, seeking damages for the wrongful death of Gilbert, for pain and anguish suffered by Gilbert during the period from December 3 to December 9, 1937, and for hospital, medical, surgical and funeral expenses. In her original petition, the administratrix sued Hilderbrandt and Humphrey as partners. She also joined Thompson and John Munson as partners. She alleged that Gilbert was an employee of Hilderbrandt and Humphrey and that Thompson caused the explosion by lighting a match in the gas-filled room. With leave of court, she later withdrew that petition and filed a substituted petition in which she sued Hilderbrandt and Humphrey as landlord and tenant, respectively, and as partners, did not join Thompson and Munson, and omitted the allegation as to Thompson lighting the match. In her substituted petition, she alleged that at the time of the accident, Gilbert was employed by Hilderbrandt and Humphrey to assist them in installing the gas system and was acting subject to their orders and directions; that the steam pipes had long been in use, were rusted, cracked and corroded and that such pipes, their joints, fittings and connections were inadequate and insufficient for retaining and transporting natural gas, and that Hilderbrandt and Humphrey knew, or by the exercise of ordinary care might have known, the condition of such pipes and that they failed to furnish Gilbert a reasonably safe place in which to work.

On February 18, 1938, Thompson commenced an action in the District Court of Oklahoma County, Oklahoma, against Hilderbrandt and Humphrey, individually, as owner and tenant, respectively, and as partners to recover damages on account of the injuries suffered by him as a result of the explosion. In his petition, Thompson alleged that he was employed by Hilderbrandt

and Humphrey to assist them in installing a gas heating system; that the work was done under the direction of Humphrey; that the steam pipes had long been in use, were rusted, cracked and corroded, and that such pipes, their joints, fittings and connections were inadequate and insufficient for retaining and transporting natural gas, and that Hilderbrandt and Humphrey knew, or by the exercise of ordinary care and diligence might have known, the condition of such pipes and that they negligently failed to provide Thompson with a reasonably safe place in which to work.

The steam pipes had been in use in the hotel for a number of years and were worn, corroded, defective and broken in many places. Hilderbrandt knew, or by the exercise of reasonable care could have known, the condition of the pipes and that the use of same for the transmission of natural gas would create a dangerous situation in the hotel.

Notice of the accident was given by Hilderbrandt to the Casualty Company and it caused an investigation of the accident to be made between January 10 and January 13, 1938, inclusive, and ascertained the true relation existing at the time of the accident between Hilderbrandt and Humphrey, between Hilderbrandt and Thompson, and between Thompson and Gilbert.

Hilderbrandt delivered copies of the pleadings and the summonses in the actions brought by the administratrix and Thompson to the Casualty Company and demanded that it defend the actions.

The Casualty Company denied liability under the policy and advised Hilderbrandt that it would not defend the actions unless Hilderbrandt would execute a nonwaiver agreement. Hilderbrandt refused to execute such an agreement and employed counsel to defend the actions.

On September 19, 1938, Hilderbrandt entered into a compromise settlement of the Gilbert case under which he agreed to pay the sum of $2,500, plus costs of $16.75, and the additional sum of $2,500 if and when he recovered the same from the Casualty Company. On the same day he entered into a compromise settlement of the Thompson case whereby he agreed to pay Thompson the sum of $10,000, plus costs of $21.45. The agreed amounts were paid by Hilderbrandt and the actions were dismissed with prejudice. Hilderbrandt also incurred expenses in the preparation of the cases aggregating $181.50 and attorneys' fees aggregating $750.

On October 17, 1938, Hilderbrandt, through his attorneys, advised the Casualty Company of the settlement of the cases and demanded reimbursement for the amounts expended.

The relationship existing between Hilderbrandt and Humphrey at the time of the accident was that of landlord and tenant and not that of copartnership. In installing the gas system, Thompson was acting as an independent contractor. Gilbert was an employee of Thompson. Neither Gilbert nor Thompson was an employee or servant of Hilderbrandt. The compromise settlements were entered into in good faith and were fair, reasonable, and prudent. Hilderbrandt was solvent at the time he entered into such settlements.

The trial court concluded that Thompson was an independent contractor and not the employee of Hilderbrandt; that Gilbert was an employee of Thompson and not an employee of Hilderbrandt; that Humphrey, in making the contract with Thompson, acted for Hilderbrandt as the latter's agent or vice principal; that Thompson and Gilbert were invitees of Hilderbrandt and that he owed them the duty of furnishing and maintaining a reasonably safe place for them to perform the work in which they were engaged and that the failure to perform that duty rendered him liable, notwithstanding they were not his employees; that it was the duty of the Casualty Company to defend the actions brought by the administratrix and Thompson and that its denial of liability and refusal to defend was a breach of the terms of the policy; that upon such refusal, Hilderbrandt had the right to defend such actions and to compromise them provided he acted in good faith; that the compromise settlements were fair, reasonable, and prudent and that Hilderbrandt was entitled to recover from the Casualty Company the amounts expended in defending the actions and paid in compromises of the claims.

From a judgment in favor of Hilderbrandt on his counterclaim for $13,469.70, plus interest at six per cent, from October 17, 1938, and for the costs of suit, the Casualty Company has appealed.

The policy expressly excluded from the coverage, accidents sustained by persons employed by Hilderbrandt. Whether

the claim is within the coverage of the policy must be determined from the allegations of the petition in the action brought against the insured.[3]

Had the Casualty Company defended the actions without a reservation of right to deny liability, it would have been obligated to pay any judgments recovered therein.[4]

We conclude that the Casualty Company did not breach the terms of the policy by refusing to defend the actions without a nonwaiver agreement on the part of Hilderbrandt.

While Hilderbrandt took general releases from the administratrix and Thompson, the payments made by him to the administratrix and Thompson were in settlement and discharge of the claims asserted in the actions brought by the administratrix and Thompson. These claims were not within the coverage of the policy. The Casualty Company was not obligated to reimburse Hilderbrandt for the amounts expended in settlement of such claims.

The judgment is reversed and the cause remanded with instructions to grant the Casualty Company a new trial.

## On Rehearing.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

BRATTON, Circuit Judge.

This was an action instituted by Hardware Mutual Casualty Company, hereinafter called the company, against G. W. Hilderbrandt, hereinafter called the insured, C. S. Humphrey, hereinafter called the tenant, and others, in which the company sought a declaratory judgment adjudicating its liability under a policy of public liability insurance indemnifying the insured against loss by reason of damages for bodily injuries sustained at the Martinique Hotel in Oklahoma City, but not to exceed $15,000 for injuries or death of one person or a total of $30,000 for injuries or death of more than one person

---

[3] Fessenden School v. American Mut. Liability Ins. Co., 289 Mass. 124, 193 N. E. 558, 560; Brodek v. Indemnity Ins. Co. of North America, 292 Ill.App. 363, 11 N.E.2d 228, 238, 239; United States Fidelity & Guaranty Co. v. Baldwin Motor Co., Tex.Com.App., 34 S.W.2d 815, 819; Morgan v. New York Casualty Co., 54 Ga.App. 620, 188 S.E. 581, 582; Ocean Accident & G. Corporation v. Washington Brick & T. C. Co., 148 Va. 829, 139 S.E. 513, 517; Commercial Standard Ins. Co. v. McKinney, Tex. Civ.App., 114 S.W.2d 338, 341, 342; Isaacson Iron Works v. Ocean Accident & G. Corp., 191 Wash. 221, 70 P.2d 1026, 1031; United Waste Mfg. Co. v. Maryland Casualty Co., 85 Misc. 539, 148 N.Y.S. 852, 858; Id., 169 App.Div. 906, 153 N.Y.S. 1148.

In Fessenden School v. American Mut. Liability Ins. Company, supra, the court said [289 Mass. 124, 193 N.E. 560]:

"It is plain the insurance company would not have been bound under its policy to indemnify the plaintiff if the plaintiff Ada Gauthier had recovered judgment on her declaration against the Fessenden School, Incorporated, as amended. We think the contention of the defendant is sound, that the obligation of the defendant insurance company is to be determined by the allegations of the declaration and it is not required to defend if it would not be held bound to indemnify the defendant in the action if the plaintiff prevailed upon the allegations of the declaration."

In Ocean Accident & G. Corp. v. Washington Brick & T. C. Co., supra, the court said [148 Va. 829, 139 S.E. 517]:

"It is contended, however, by counsel for the brick company, that the insurer was bound by the terms of its policy to defend all suits and actions, or other proceedings, instituted against the employer; basing the argument in this respect upon the third clause of the policy above transcribed. We cannot agree with the argument in this respect. It is true that the provisions of the policy alluded to may have the effect of binding the insurer to defend all suits, although 'such suits, or other proceedings, allegations, or demands are wholly groundless, false, or fraudulent,' as stated in the policy. It is scarcely logical to hold that this provision concerning the right and obligation to defend the suit, which is often contained in the indemnity policies, would be intended to bind the insurer to take charge of and defend a suit in which, under the terms of the policy, it had no interest. If this is true, it would result in compelling the insurer to waive its claim of nonliability, because it is quite generally held that, if the insurer does defend and a judgment results against the employer, the insurer is bound to pay the judgment."

[4] Meyers v. Continental Casualty Co., 8 Cir., 12 F.2d 52, 55, 56; Ocean Accident & G. Corp. v. Washington Brick & T. C. Co., supra; Note, 76 A.L.R. 23, 159–177; Note, 81 A.L.R. 1326.

296

in a single accident. The policy provided that the company should defend in his name and on his behalf any suit against the insured seeking damages on account of any such injury, even if the suit were groundless, false or fraudulent; and it expressly excluded from the coverage employees of the insured, structural alterations, new construction or demolition work on the building or equipment unless written permit therefor was endorsed on the policy, and work done by a sub-contractor. The insured owned the property and the tenant occupied it on a month to month basis at a cash rental of $250 per month. It was determined to change the heating system from that of hot water to that of natural gas. H. C. Gilbert, a gas fitter, and J. C. Thompson, a plumber, and others, were in and about the premises in connection with the making of such change. An explosion occurred. Gilbert and Thompson were seriously burned. Gilbert died, and his surviving widow was appointed administratrix of his estate. The administratrix and Thompson filed separate suits against the insured and the tenant for damages, aggregating $41,500 in one case and $53,500 in the other. It was alleged in each case that the insured and the tenant were partners, and that the injured person was their employee in making the change in the heating system. The insured demanded that the company defend the actions. The company declined unless the insured would execute a nonwaiver agreement, and he refused to do that. The grounds upon which the company predicated its declination were that in each instance the claim asserted was for injuries to an employee of the insured, and that they were sustained in connection with a structural alteration being made without its consent having been secured, and therefore the claims were not within the coverage of the policy. Thereafter the insured compromised and settled the cases, and later demanded that the company reimburse him for the amounts paid.

The company then instituted this suit under section 274d of the Judicial Code, as amended, 28 U.S.C.A. § 400, and prayed for a judgment declaring that it was without obligation to defend the two actions or to reimburse the insured for the sums paid or obligated to be paid in their settlement, or for expenses incurred. The court found that the tenant sought to make the change in the heating system; that the insured consented with the distinct understanding that new gas pipes should be used; that the

steam pipes should remain in the hotel but in no event be used in connection with the change; that the tenant was to make the change at his own expense and risk and under his direction, but was to be reimbursed for the cost thereof out of the rental; that Thompson advised the tenant that the change could be made safely and at less expense by using the steam pipes in lieu of new gas pipes; that the tenant endeavored without success to reach the insured for the purpose of securing his permission to use the steam pipes; that the tenant then contracted with Thompson to make the change by the use of the steam pipes, and agreed to pay him the cost of the materials, supplies, and labor, plus ten per cent thereof; that Thompson was to have full and complete charge of the work, and the insured, through the tenant or otherwise, was not to have and did not have anything to do with the method or manner of the work, and did not exercise or attempt to exercise any control over Thompson or those working for him; that Thompson employed Gilbert and others to work for him in making the change; that Gilbert was not a licensed plumber but had charge of the work for Thompson; that the change contemplated the disconnection of the steam pipes from the boiler in the basement, their connection with gas, the disconnection and removal of the radiators from the rooms, the installation of gas stoves therein, the connection of the pipes with the stoves, and the transmission of gas through the lines into the rooms; that the change was in progress at the time the explosion occurred; that such change was not a structural alteration, new construction, or demolition; that the insured did not know until after the explosion had occurred the kind or character of contract which the tenant had made with Thompson or any one else, and that he had no information concerning the matter; that after the company refused to defend the suit unless the insured would execute the nonwaiver agreement, and the insured had refused to execute such agreement, he employed counsel of his own choice to represent him; that he subsequently compromised and settled the suits, paying $2,857.50 in one and $10,612.20 in the other, and both were dismissed with prejudice; that each settlement was fair, reasonable and prudent, that the insured acted in good faith in making them, and that he was solvent; that the insured and the tenant were not partners in the operation of the

hotel; that Thompson was an independent contractor in changing the heating system, not an employee of the insured; that Gilbert was working for Thompson and was not an employee of the insured; that the company knew from the insured and through the tenant the relationship of all parties; that it knew or could have known by diligent inquiry that the steam pipes in the hotel were worn, corroded, defective, and broken in many places; that Thompson and Gilbert were invitees of the insured; that he owed them the duty of furnishing and maintaining a reasonably safe place to perform the work in which they were engaged; that failure to perform his duty in such regard would render him liable to them as a matter of law, notwithstanding the fact that they were not his employees; that under all the facts and circumstances it was the duty of the company to defend the actions for and on behalf of the insured; that its denial of liability and refusal to defend except upon the proposed nonwaiver agreement constituted a breach of the terms and provisions of the policy; and that it should reimburse the insured for the amounts paid in connection with the settlement.

Judgment was rendered for the insured, and the company appealed. We reversed the judgment, holding that the question whether the claim in each instance was within the coverage of the policy must be determined from the allegations of the petition in the action brought against the insured, and that since the relationship of employer and employee was alleged in each case, the claims fell outside the coverage and the company was not obligated to defend. The cause is now pending on rehearing.

It is well settled in Oklahoma that "an independent contractor is one who, exercising an independent employment, contracts to do a piece of work according to his own methods, and without being subject to the control of his employer except as to the result of the work." Chicago, Rock Island & Pacific Railway Co. v. Bennett, 36 Okl. 358, 128 P. 705, 20 A.L.R. 678; Producers' Lumber Co. v. Butler, 87 Okl. 172, 209 P. 738; Tankersley v. Webster, 116 Okl. 208, 243 P. 745; White v. McGee, 157 Okl. 204, 11 P.2d 924; Beasley v. Bond, 173 Okl. 355, 48 P.2d 299. And a sub-contractor is one who takes a portion of a contract from the principal contractor or from another sub-contractor. Ryndak v. Seawell, 13 Okl. 737, 76 P. 170; Dolese Bros. Co. v. Andrecopulas, 113 Okl. 18, 237 P. 844. Thompson entered into the contract with the tenant as agent of the insured. He was to have full charge of the work. The insured was not to have and did not have anything to do with the method or manner of the work, and did not exercise or attempt to exercise any control over Thompson or those working for him in respect to the manner in which it was done. Thompson was an independent contractor, not a sub-contractor, or employee of the insured.

But the company contends that the policy did not obligate it to defend the insured in a suit in which liability was asserted for damages sustained by an employee; that in determining the question whether the two claims or causes of action came within the coverage of the policy, it was warranted in looking only to the allegations of the petitions in the suits against the insured; that since each petition expressly alleged that the injuries were sustained by an employee, the company was not obligated or required by the policy to defend; and that its denial of liability and refusal to defend did not constitute a breach of the contract with a resulting obligation to reimburse the insured for the sums paid in compromise and settlement of the suits. The contention is not bereft of support. It has been held where the facts presented the question that under a policy of this kind, or one containing a similar provision requiring the payment of workmen's compensation, the company may look exclusively to the complaint or petition in the proceeding against the insured to determine whether the claim is one which by the terms of the contract the company is required to defend; and that where the two conflict, the allegations control over the actual facts. Fessenden School v. American Mutual Liability Insurance Co., 289 Mass. 124, 193 N.E. 558; Lamb v. Belt Casualty Co., 3 Cal.App.2d 624, 40 P.2d 311. And the rule that an insurer may look exclusively to the complaint or petition in the case against the insurer has been declared in other cases in which there was no conflict between the allegations and the actual facts, both taking the claim or cause of action outside the coverage. Fulton Company v. Massachusetts Bonding & Insurance Co., 138 Tenn. 278, 197 S.W. 866; United States Fidelity & Guaranty Co. v. Baldwin Motor Co., Tex.Com.App., 34 S.W.2d 815; Texas In-

demnity Insurance Co. v. McLelland, Tex. Civ.App., 80 S.W.2d 1101; Commercial Standard Insurance Co. v. McKinney, Tex. Civ.App., 114 S.W.2d 338; Brodek v. Indemnity Insurance Co., 292 Ill.App. 363, 11 N.E.2d 228; Ocean Accident & Guarantee Corp. v. Washington Brick & Terra Cotta Co., 148 Va. 829, 139 S.E. 513; Morgan v. New York Casualty Co., 54 Ga.App. 620, 188 S.E. 581; United Waste Manufacturing Co. v. Maryland Casualty Co., 85 Misc. 539, 148 N.Y.S. 852; Id., 169 App.Div. 906, 153 N.Y.S. 1148. But these cases have little persuasion here for in each of them the allegations contained in the complaint or petition against the insured and the actual facts attending the accidental injuries were in harmony, both disclosing liability on the part of the insured falling without the scope of the insurance coverage.

In University Club v. American Mutual Liability Insurance Co., 124 Pa.Super. 480, 189 A. 534, 536, the policy provided that the company would indemnify the insured against damages for injuries suffered by employees who were legally employed, and obligated the company to defend in its name and on its behalf all suits or other proceedings. An injured employee engaged in operating an elevator alleged in his suit for damages that at the time of the accident he was seventeen years of age. The insurance company refused to defend the action and, after disposition had been made of it, the insured sued to recover expenses which it had incurred in making defense. The insurance company rested its defense upon the allegation in the claim against the insured that the employee was seventeen years old, and contended that it was illegal to employ an elevator operator under eighteen years of age. The insured denied that the employee was seventeen years of age and alleged that he was over eighteen. The insurance company offered no evidence at the trial showing that the employee was under eighteen years of age. In sustaining the judgment for plaintiff, the court said:

"The burden was on the defendant to prove the facts relied upon to sustain its affirmative defense that the minor employee, Cook, was illegally employed at the time of the accident (Bowers v. Great Eastern Casualty Co., 260 Pa. 147, 148, 149, 103 A. 536; Goldsboro v. Loyal Protective Ins. Co., 93 Pa.Super. 583, 585; Crahan v. Automobile Underwriters, 116 Pa.Super.

353, 355, 176 A. 817), and that it was, in consequence, relieved of liability to defend the action on that score. This it wholly failed to do."

The effect of the holding plainly was that the actual facts controlled, not the allegation in the suit against the insured.

In Massachusetts Bonding & Insurance Co. v. Roessler, Tex.Civ.App., 112 S.W.2d 275, 279, Griffin sustained personal injuries while in the employ of Harper who was engaged in developing certain premises of the insured. Griffin died, and his surviving heirs sought damages from the insured. They alleged that at the time of the accident Griffin was an employee of the insured. The policy excluded employees under certain circumstances. The insurance company declined to defend the action. The insured made the necessary defense and then sued the company to recover the amount expended. He alleged that Griffin was in the employ of Harper, alleged additional facts which brought the liability within the coverage, and pleaded haec verba the plaintiffs' petition in the suit by the heirs. The parties stipulated that the facts set forth in the petition of the insured, except conclusions of law, were true. Judgment was rendered for the insured. In the course of its opinion affirming the judgment, the court said:

"The responsibility of appellant to defend the suit depended upon whether or not the allegations in the Griffin petition presented a cause of action against appellee by reason of his ownership, maintenance, and use of the premises covered by the policy. The petition charged that appellee had employed Griffin to dig, haul, and spread gravel on the drives and roadways of this particular farm. The appellant investigated the facts surrounding these allegations and found those pertaining to Griffin's employment by appellee were untrue; with this knowledge, it declined to defend the suit. * * * Under the provisions of the statute above cited we find those employing domestic servants and farm laborers are not included in the general provisions of the law requiring workmen's compensation insurance. No facts are alleged in the Griffin petition to support the statement that no exceptions existed in favor of appellee. The appellant had investigated and knew the facts; they are set out in appellee's petition in this case, and appellant is bound by them. It knew appellee was preparing the premises for farm purposes and

that all employees thereon were either domestic or farm laborers and that he was not subject to the Workmen's Compensation Act [Vernon's Ann.Civ.St. art. 8306 et seq.]. Under these conditions it could not ignore the Griffin suit because it contained an allegation to the contrary, especially when that allegation was clearly a conclusion of the pleader both as to facts and law; such conclusions are not embraced within the stipulation and have no force or effect in this appeal."

In United Waste Manufacturing Co. v. Maryland Casualty Co., 85 Misc. 539, 148 N.Y.S. 852, 859, supra, the policy provided that it did not cover any accident to or caused by any child employed by the insured contrary to law. It was alleged in the suit against the insured that the injured employee—Maloney—was under sixteen years of age at the time of the accident, that being below the legal age limit, the company declined to defend. The insured settled the judgment rendered against it and then sued the insurance company to recover the amount. Testimony was adduced relating to the age of the employee which disclosed that he was in fact under sixteen. The allegation and the fact were not in conflict. On the contrary, according to both the employee was illegally employed and therefore the company was not obligated to defend. But the court took occasion to say:

"If the waste company had protected its interests by defending the Maloney case, and it had resulted in an adjudication to the effect that the Maloney boy was over 16 and that the waste company was liable because of negligence in its relations with the Maloney boy, the Maryland Casualty Company would have been liable under its policy, not only for the judgment recovered, but for the costs and counsel fees to which it had been put in being obliged to itself look after the Maloney case; * * *."

And while the question was not presented in Hugh Breeding Transport v. American Fidelity & Casualty Co., 175 Okl. 508, 54 P.2d 156, the court laid emphasis upon a letter from the insurer to the insured, stating that the truck covered by the policy was not the one involved in the accident, thus indicating and implying that an insurer may and should take into consideration the actual facts, and not confine itself to the allegations contained in the complaint or petition against the insured, in determining whether it is obligated to defend.

Here, neither Thompson nor Gilbert was an employee of the insured, neither was a sub-contractor, and, as hereinafter said, the change being made in the heating system was not a structural alteration. The accidental injuries were sustained in circumstances which brought the liability of the insured well within the coverage of the policy, and the company had knowledge of the material facts. Fairly construed, the insurance contract obligated the company to defend in the name and on behalf of the insured any suit or claim for damages sustained by such parties, and, within the maximum amount fixed by the policy, to indemnify him against loss. The actual facts which gave rise to such obligation on the part of the insured were brought to its attention, and the insured demanded that it defend the actions. It was his right to be protected. He had purchased that right for a valuable consideration, and he demanded that the company fulfill its contract. He was not obligated by the contract to sign the nonwaiver agreement. But the company elected to close its eyes to the actual facts of which it had knowledge, and to look exclusively to the ill-founded allegation in the petition in each case that the injured person was an employee. In the brief of the insured it is said:

"A simple illustration will demonstrate the unsoundness of the position taken by opposing counsel: A owns two automobiles, a Ford and a Nash. The Ford is covered by the policy of the company but the Nash is not. A, while driving the Ford, negligently injures a third party and this party brings an action for damages alleging that A was driving the Nash. A notifies the company of the accident, furnishes it a copy of the petition, and explains to it that the car actually involved in the accident was the Ford and not the Nash. The company shuts its eyes to the information given to it by A as to the car actually involved in the accident, relies solely upon the allegations of the petition, makes no investigation of the facts and circumstances, denies liability and refuses to defend except upon a nonwaiver which A declines to give. A undertakes the defense of the action with counsel of his own and negotiates a prudent settlement for a stipulated sum which he pays, and then makes de-

mand upon the company to reimburse him which it declines to do, taking the position that there is no coverage as reflected by the allegations of the petition."

The hypothetical case appropriately illustrates with emphasis the scope and effect of the contention of the company. Upon further consideration, we think the contention must fail.

■ It is urged that the change in the heating system constituted a structural alteration within the meaning of the policy, and therefore the injuries were not within the policy. A structural alteration of a building or its equipment is one which affects some portion thereof in a vital and substantial manner, and changes its characteristic appearance. It denotes a change or substitution in a substantial particular. Commonwealth v. Hayden, 211 Mass. 296, 97 N.E. 783; Plaza Amusement Co. v. Rothenberg, 159 Miss. 800, 131 So. 350; Mayer v. Texas Tire & Rubber Co., Tex.Civ. App., 223 S.W. 874; Pross v. Excelsior Cleaning & Dyeing Co., 110 Misc. 195, 179 N.Y.S. 176.

The boiler of the steam heating plant had worn out, and it was necessary to install a new boiler or substitute another method of providing heat. The contract contemplated the disconnection of the pipes from the boiler and from the radiators and removal of the radiators, the installation of gas stoves, and the connecting of the pipes with the gas in the basement and with the stoves in the rooms. No new pipes were to be installed, and no physical change was to be made in the building, either as to appearance, use, or otherwise. The change made in the manner indicated did not constitute an alteration of the building within the meaning of the policy. Kinston Cotton Mills v. Liability Assurance Corp., 161 N.C. 562, 77 S.E. 682; Kresge v. Maryland Casualty Co., 154 Wis. 627, 143 N.W. 668; Klumpp v. Rhoads, 362 Ill. 412, 200 N.E. 153. The cases of Home Mixture Guano Co. v. Ocean Accident & Guarantee Corp., C.C., 176 F. 600, United States Fidelity & Guaranty Co. v. Southland Life Ins. Co., 5 Cir., 22 F.2d 731, certiorari denied, 279 U.S. 846, 49 S.Ct. 343, 73 L.Ed. 991, and Robinson v. Globe Indemnity Co., 251 App.Div. 288, 296 N.Y.S. 257, upon which the company places reliance, are not to the contrary in respect of principle. They are clearly distinguishable on decisive facts.

■■ The remaining contention is that the settlements were not made in good faith, were improvident, and were not binding upon the company. Thompson and Gilbert were invitees on the premises. It was the duty of the insured to furnish and maintain a reasonably safe place to perform the work in which they were engaged, and failure to perform his duty in that respect would constitute actionable negligence. The pipes throughout the building were worn, corroded, defective, and broken in many places. Gilbert died from the injuries which he sustained, and Thompson was seriously and permanently injured. Damages aggregating more than ninety thousand dollars were sought, the maximum of the policy was only thirty thousand dollars, the insured was solvent, and the company had declined to defend the suits or to indemnify the insured. He was justified in the circumstances in making fair and reasonable settlements. Jahns & Knuth Co. v. American Indemnity Co., 182 Wis. 556, 196 N.W. 569. Taking into consideration all of the facts and circumstances, it cannot be said that the settlements made were improvident, and there is no basis whatever for the suggestion that they were made with a lack of good faith.

The judgment is affirmed.

PHILLIPS, Circuit Court (dissenting).

I think we should adhere to the views and the conclusion reached in our first opinion herein.

The claims asserted by Gilbert, administratrix, and Thompson in the actions brought by them against Hilderbrandt were clearly without the coverage of the policy. They sought damages for breach of duty by Hilderbrandt, as employer, to Thompson and H. C. Gilbert, as his employees. The policy expressly excluded claims by employees of Hilderbrandt. It was impossible for the Casualty Company to determine with certainty whether the true facts were as stated to it by Hilderbrandt and Humphrey, or as alleged by Gilbert, administratrix, and Thompson in their respective petitions.

The Casualty Company offered to defend the actions brought by Gilbert, administratrix, and Thompson, provided Hilderbrandt would consent to a reservation of right by the Casualty Company to deny liability. Had the Casualty Company defended the actions without a reservation of right to

deny liability, expressly or impliedly consented to by Hilderbrandt, it would have been obligated to pay any judgment recovered against Hilderbrandt. Hilderbrandt expressly refused to consent to such reservation. To construe the policy as obligating the Casualty Company to defend an action predicated on a claim clearly without the coverage of the policy, without the insured consenting to a reservation of its right to deny liability, would produce this anomalous result: By the covenant to defend, the Casualty Company would be obligated to defend a claim it was not obligated to pay because it was clearly without the coverage of the policy, and, by virtue of having defended it, would then be obligated to pay the claim if established,[1] although by the terms of the insuring clause it was excluded from the coverage. Such a construction would render meaningless the limitations written into the coverage clause.

I think the conclusion reached in the first opinion herein is supported by the cases cited in Note 3 thereto. My associates are of the opinion that those cases are inapplicable because, under the true facts, claims growing out of the same accident could have been asserted by Gilbert, administratrix, and Thompson, within the coverage of the policy. Conceding that claims could have been asserted within the coverage of the policy, no such claims were asserted. Until they were asserted, there was no obligation on the Casualty Company either to defend or pay the claims. Certainly, the existence of a claim within the coverage of the policy did not obligate the Casualty Company either to defend or pay a claim clearly without the coverage of the policy. I am of the opinion that the refusal to defend did not constitute a breach of the policy and that when Hilderbrandt elected to pay claims clearly without the coverage of the policy, there was no obligation on

the part of the Casualty Company to reimburse him therefor.

The holding in University Club v. American Mutual Liability Ins. Co., 124 Pa.Super. 480, 189 A. 534, 535, does not seem to me to be contrary to the views herein expressed. In that case, the coverage of the policy was limited to employees legally employed. In the claim asserted against the insured, the plaintiffs alleged that the employee at the time of the accident was 17 years of age. If that allegation were true, his employment was unlawful. But the claim asserted against the insured was not predicated on the unlawful employment of the employee. It was predicated upon a defective elevator and was within the coverage of the policy. The allegation of age was merely incidental or collateral and was not relied on as a basis for the claim. In the opinion the court said:

"It will be noted that the plaintiffs in that action [the personal injury action against the insured], in their statement of claim, based their right of recovery on the defective condition of the elevator, and did not aver, or specifically rely on, any illegal employment of the minor plaintiff."

Had the claim been based on alleged illegal employment, I think the court would have held there was no duty to defend.

I do not think an incidental or collateral allegation of fact in the action against the insured not essential to the claim asserted, and not in anywise constituting the basis thereof, relieves the insurer from the duty to defend. The test is whether the claim asserted against the insured is within the coverage of the policy. Here, the claims were predicated upon the relation of master and servant and a breach of duty by the master, and claims predicated on that relationship were expressly excluded from the coverage of the policy.

For the reasons indicated, I respectfully dissent.

---

[1] See cases cited in Note 4 to the first opinion herein.