JAHNS & KNUTH COMPANY, Plaintiff, vs. AMERICAN INDEMNITY COMPANY and another, Defendants.

*November 15, 1923—February 12, 1924.*

*Insurance: Policy exempting liability of insurer: Injuries from elevator: Construction: Denial of liability by insurer: Amendment to answer to set up new defenses: Voluntary settlement by insured: Recovery from insurer of amount paid: Corporation succeeding to rights of insured partnership.*

1. A clause in a public liability insurance policy eliminating liability for accidents sustained by any one not in the employ of the assured, "while entering or leaving the car *or* (of) any elevator or hoist . . . or any bodily injuries or death . . . which may be in any way caused, occasioned or contributed to by the existence or operation of any such elevator or of the well or hoist-way thereof, or of any appurtenances thereto," contemplates only passenger elevators, and does not preclude a recovery for injuries resulting when the cable supporting the hopper in a temporary hoist, used for raising materials to the fifth floor of a building for construction purposes, broke, allowing the hopper to fall to the sidewalk.   p. 563.
2. Where a casualty insurance company, after an accident, has improperly declined to defend suits brought against the insured on the ground that there was no liability because of a specific clause in the policy, it cannot, after settlement by the insured and the institution of an action against it on the policy, by amendment to its answer assert defenses of which it had knowledge long prior to the present trial.   p. 563.
3. Where an insured, after wrongful refusal of the insurer to defend suits for injuries for which it was liable, has made settlements which are concededly reasonable and fair, the insurer, in a subsequent action to recover the amount paid in

such settlement, cannot avoid liability because the settlements were voluntary, rather than upon final judgment after trial. p. 564.

4. The title of a corporation which had succeeded to the rights and liabilities of a partnership to a cause of action against an insurance company for failure to pay claims and defend suits for injuries against the partnership is *held* to be sufficiently established, particularly where the trial court properly permitted formal documents to be executed during the trial assigning to or ratifying and confirming in the plaintiff the necessary rights. p. 565.

APPEALS from a judgment of the circuit court for Milwaukee county: G. N. RISJORD, Judge. *Affirmed.*

Plaintiff corporation is the successor of a copartnership under the same title which paid out the sum of $5,564.54 in connection with the settlement of three actions or claims made against such copartnership for personal injuries. No question is raised as to the good faith or reasonableness of such settlements made or the expenses incurred and included in said sum.

The defendant and appellant, *American Indemnity Company,* on October 25, 1919, issued the liability insurance policy here in suit. Shortly before the issuing of the policy the prior copartnership had been carrying liability insurance obtained through a Madison company, but thereafter made an arrangement with the defendant and respondent, *Building Contractors Limited Mutual Liability Insurance Company,* which had its offices in Milwaukee and which was organized and conducted by a limited number of other building contractors, and which is hereinafter called the *Milwaukee Company.* Under this the *Milwaukee Company* itself provided for the insurance under the workmen's compensation act, and also arranged through a firm of Milwaukee insurance brokers that the public liability insurance should be carried by the defendant and appellant, *American Indemnity Company,* and the policy here was issued under such arrangement. The policy was delivered to the *Mil-*

*waukee Company* for plaintiff's predecessors and continued in its possession until after the accident. The features in connection with said policy deemed material on the appeal here are as follows:

1. An indorsement found attached to said policy signed and dated as of October 29th (the policy being dated October 25, 1919), and signed by one of the employees in the office of said insurance brokers and reading, so far as material, as follows:

*"Indorsement:* (Eliminating accidents caused by elevator or hoist.)

"It is hereby understood and agreed that this policy does not cover loss from liability for, or any suit based on bodily injuries or death sustained by any person or persons not in the employ of the assured, while entering or leaving the car, *or* (of) any elevator or hoist within or without the premises, or any bodily injuries or death sustained by any person or persons not in the employ of the assured, which may be in any way caused, occasioned, or contributed to by the existence or operation of any such elevator or of the well or hoist-way thereof, or of any appurtenances thereto or anything connected therewith, or by machinery, generating power for, or in use in any way in connection with the operation of any such elevator or hoist."

2. The following provisions were in the policy itself:

"There are no elevators on the premises except as follows: No exceptions."

"3. *Exceptions.* H. This policy does not cover accidents caused by: . . . (b) any person by reason of the failure of the assured to observe any statute or local ordinance affecting the safety of persons."

4. Of *"Right of recovery.* L. No action shall lie against the company for any loss or expense under this policy unless it shall be brought for loss or expense actually sustained and paid in satisfaction of a final judgment, within ninety days from the date of said judgment and after trial of the issue."

5. *"Reporting suits.* If a suit is brought on account of an accident, the assured shall forward immediately to the

company, or to its duly authorized agent, every process and paper served on him. The company, at its own expense, will settle or defend said suit *whether groundless or not; the moneys expended in said defense shall not be included in the limits of the liability* fixed under this policy. The assured shall not assume any liability, nor interfere with any negotiation for settlement or any legal proceeding, nor incur any expense nor settle any claim except at his own cost, without the written consent of the company."

There was also attached by the same employee of the insurance brokers to the policy a typewritten statement headed "Classification" containing among other things the following:

"(1) *Contractors*—Building private residences, flats or apartments, with or without stores, one-story stores and stores with offices above, private stables and private garages and other buildings, all not to exceed three stories and basement in height," etc.

The immediate work being done at the time of the accident was the placing of the roof on the fifth story of a building on West Water street in Milwaukee. This building had been of three stories when this work was commenced. The work required the use of a substantial framework erected over the sidewalk in front of said premises to a height above said fifth floor. It was used exclusively for the elevating of building material, including the concrete, from the ground to where such work was being done. The concrete mixture was elevated through this framework and then poured into a heavy iron hopper and from that into barrows for distribution. While being so used the hopper was stationary against the framework. It was necessary from time to time to raise the hopper by means of one or more cables, independent of the hoisting apparatus used for raising the building material, from the stationary position it had to one higher up on the framework. At the time of this accident the hopper was being so raised, but by a cable which was of insufficient strength and below the

specified requirements of the industrial commission's regulations.    By reason of such insufficiency the hopper fell, crashing part way through a canopy erected over the sidewalk between the building and the aforesaid framework. The canopy so built was not constructed in compliance with the ordinance of the city regulating such matters.    By reason of this fall an employee of the contractors was killed and several passers-by injured on July 18, 1921.

Prompt notice was given to the appellant, *American Indemnity Company,* of this accident.    The attorneys representing the *Indemnity Company* in Milwaukee immediately made an investigation of the matter, and on July 25, 1921, wrote the plaintiff's predecessors referring to said accident and containing the following:

"We thoroughly investigated the accident, the manner of its happening, the nature of the machinery being used by you in your construction work, etc., and after an examination of your policy to which is attached an indorsement eliminating the *American Indemnity Company's* liability for accidents caused by elevator or hoist, we reported the whole case to our client.    We are this day in receipt of a telegraphic communication from the *American Indemnity Company* directing us to deny any and all liability for the claims which have arisen out of this accident and directing us to refuse to have anything to do with the case and to advise you to that effect.    This letter, therefore, is to advise you that the *American Indemnity Company* is not interested in the cases which may arise out of this accident for the reason that their liability is excluded because of the policy indorsement hereinbefore referred to."

Formal notice was also given to the *American Indemnity Company* that it should, in accordance with said policy, assume the defense as to the several suits brought on behalf of the injured persons other than the employee.    The appellant refused to defend any of such lawsuits or litigation on account of said accident.

Similar notices were served upon the *Milwaukee Com-*

*pany,* which, through its attorneys, did assume the defense of said actions. Just prior to the cases being reached for trial the *Milwaukee Company* refused to continue in such defense, taking the position that it was not liable through any obligation assumed on its part. The plaintiff or its predecessors then engaged their own counsel, and after giving notice to the appellant and the *Milwaukee Company* made a settlement of each of said claims of liability and paid the aggregate amount hereinbefore stated. Thereafter this suit was brought by the plaintiff corporation against the defendants.

Relief was sought by the several defendants as against each other, and during the trial the appellant amended its answer and also its cross-complaint as against its codefendant.

The action was tried by the court, which made its findings of fact and directed judgment for the aforesaid amount of $5,564.54, with interest, in favor of the plaintiff as against the defendant *American Indemnity Company,* and dismissed the action against the *Milwaukee Company.* From such judgment the appellant *American Indemnity Company* has appealed.

The plaintiff appealed from the part of the judgment dismissing the action against the *Milwaukee Company.* That company, under sec. 3049*a,* Stats:, in case this court should sustain the contentions of the *American Indemnity Company,* seeks a review of the matters presented as between the two defendants.

For the *Jahns & Knuth Company* there was a brief by *Quarles, Spence & Quarles,* attorneys, and *Arthur B. Doe* and *Kenneth P. Grubb,* of counsel, all of Milwaukee, and oral argument by *Mr. Doe* and *Mr. Grubb.*

For the *American Indemnity Company* there was a brief by *McMahon, McMahon & Hayes* of Milwaukee, and oral argument by *Omar T. McMahon.*

For the *Building Contractors Limited Mutual Liability Insurance Company* there was a brief by *John M. Niven*, attorney, and *Sawyer & Sondel*, of counsel, all of Milwaukee, and oral argument by *David A. Sondel*.

The following opinion was filed December 11, 1923:

Eschweiler, J. The question of primary importance presented is as to whether or not the *American Indemnity Company*, appellant, can successfully defend because of the clause purporting to eliminate liability for accident caused by elevator or hoist as found in the indorsement attached to the policy and above quoted.

The framework or structure erected in front of the building, being of the usual form and construction in general use for that kind of work and from which the hopper fell causing the accident, was certainly an elevator or hoist (there being no apparent or substantial difference in the meaning of these two words), as its purpose and use was to elevate or hoist building materials from the ground to the upper portions of the building. It was, however, clearly not a passenger elevator or hoist or one into or from which passengers were expected to step. Its functions excluded its use for passengers; its use was merely temporary during the construction of the building. These features, so entirely distinct, separate, and easily distinguishable from the uses and purposes of a passenger elevator, make it of such a different class of structures, even though the same name may be used for it, from the well recognized class of passenger elevators, as to require our holding in accord with the trial court that it is not included in this relieving clause. This clause is expressly aimed at excluding liability for injuries sustained by persons other than employees while entering or leaving the car of any elevator or hoist. This language concededly and plainly refers to a passenger elevator. The following provisions in the same rider are con-

cerned with injuries caused by the existence or operation of any *such* elevator, well, or hoist-way *thereof* or the appurtenances or machineries used in connection with the operation of *such* elevator or hoist, and must properly and necessarily be construed to refer to *such* elevator or hoist as is first designated; that is to say, a passenger elevator, and therefore not to such an appliance as was here used in construction work only. This provision, therefore, is no defense.

Upon the trial the *Indemnity Company*, appellant, by proposed amendments to its answer, attempted to assert as defenses under the appropriate clauses in the policy set forth in the above statement of facts that there had been a violation by the insured of the regulations of the industrial commission with reference to the strength of the cable used in hoisting the hopper and of the ordinance of the city as to the strength and form of the canopy built over the sidewalk.

Immediately after the accident an examination was made by the appellant's representative and attorney, a report made by him to the company, and a definite stand taken as indicated in the above quoted portion of the letter to the insured, wherein the sole ground for denial of the liability on the part of the appellant *Indemnity Company* was the clause regarding the elevator and which is above discussed. A full examination of the situation was made at that time and ample opportunity afforded for further investigation if desired. A definite, positive, and precise stand was then taken by the company after full consideration, whereby it limited its grounds for denying liability to the one defense which is above discussed. Having so elected to stand upon that ground it ought not to be heard, after trial commenced, to assert other and different grounds, knowledge of which it had long prior to trial. It must be held to the stand it voluntarily assumed. *Railway Co. v. McCarthy,* 96 U. S. 258, 267; *Littlejohn v. Shaw,* 159 N. Y. 188, 191,

53 N. E. 810; *Grimwood v. Munson S. S. Line,* 273 Fed. 166, 168; *Ward v. Queen City Ins. Co.* 69 Oreg. 347, 138 Pac. 1067.

The appellant *Indemnity Company* also contends that the sums sought to be recovered in this case were paid by way of voluntary settlements of the claims made against the assured rather than upon final judgment after trial of the issues in accordance with the language quoted above and found in the policy.

Long prior to such settlements, however, the *Indemnity Company* had deliberately breached its corresponding obligation in that regard by repudiating any liability whatsoever and expressly refusing, upon demand, to assume the defense of the actions brought against the assured. Having taken such position, it surely cannot now be heard to say that the assured, instead of making a reasonable and fair settlement (and it is conceded that such was the nature of the settlements), should have permitted such claims to proceed to judgments and thereby incur additional expense and possibly much larger liability for damages. *St. Louis D. B. & P. Co. v. Maryland Cas. Co.* 201 U. S. 173, 181, 26 Sup. Ct. 400; *Royal Ind. Co. v. Schwartz* (Tex. Civ. App.) 172 S. W. 581; *Tighe v. Maryland Cas. Co.* 218 Mass. 463, 106 N. E. 135; *Fullerton v. U. S. Cas. Co.* 184 Iowa, 219, 167 N. W. 700; *Kutschenreuter v. Providence Washington Ins. Co.* 164 Wis. 63, 159 N. W. 552.

It is further claimed that the appellant is freed from liability because of the representation made in a clause of the contract above quoted to the effect that there was no elevator on the premises. The disposition we have made of the primary question here involved disposes of this also adversely to appellant's contention.

Some question is also raised as to the effect to be given to a certain so-called release executed by plaintiff's predecessors subsequent to the accident on account of the supposed loss of the policy in question. We do not deem it necessary to

Jahns & Knuth Co. v. American Ind. Co. 182 Wis. 556.

set forth the language in that document because it so plainly concerned only the question of the issuing of a new policy to take the place of one claimed to have been lost that it does not need further discussion, and the conclusion of the trial court respecting it was clearly right.

Finally it is contended that there is no proper proof of chain of title to this cause of action from the assured designated in the policy to the plaintiff corporation sufficient to warrant its right to recover.

It is true there were no express words in the documents or proceedings transferring the business of the preceding copartnership to the present plaintiff specifically mentioning this transaction, yet the plaintiff's assuming the assets and liabilities of the preceding partnership was at a time when, although claims had been asserted by the injured persons, yet the defense as to these claims had been assumed by the *Milwaukee Company,* and it was evidently then not considered that there was any definite obligation that would have to be assumed by the plaintiff or its predecessors in connection with such accident. Furthermore, the trial court permitted, and properly, formal documents to be executed during the trial to assign to or ratify and confirm in the plaintiff the necessary rights to maintain this action against the appellant, thereby carrying out the plain intent and purposes of the parties concerned.

Other questions presented do not seem to require specific consideration.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied, with $25 costs, on February 12, 1924.