## CHICAGO, R. I. & P. R. CO. v. DOBRY FLOUR MILLS, Inc.

No. 5448.

United States District Court
W. D. Oklahoma.
March 18, 1953.

15. D.C.D.C.1948, 79 F.Supp. 871.

17. D.C.N.Y.1952, 12 F.R.D. 508.

18. Id., 12 F.R.D. at page 510.

19. United States v. Scophony Corporation of America, footnote 1 supra, 333 U.S. at page 807, 68 S.Ct. at page 862, 92 L.Ed. 1091.

Savage, Gibson & Benefield, Oklahoma City, Okl., for plaintiff.

Dudley, Duvall & Dudley, Oklahoma City, Okl., for defendant.

WALLACE, District Judge.

The plaintiff, Chicago, Rock Island and Pacific Railroad, brought this action to recover money they paid to one of their

employees in settlement of injuries allegedly received due to the negligence of the defendant, Dobry Flour Mills.

The plaintiff alleged that in 1934 its legal predecessor built a spur line on the property of the defendant to provide railroad service necessary in defendant's business. When this spur line was built the legal predecessor of plaintiff and the defendant entered into a written contract providing among other things that:

> "The industry [defendant] also agrees to indemnify and hold harmless the Trustees [plaintiff] for loss, damage or injury from any act or omission of the industry, its employees or agents, to the person or property of the parties hereto and their employees and to the person or property of any other person or corporation while on or about said track, and if any claim or liability other than from fire shall arise from the joint or concurring negligence of both parties hereto, it shall be borne by them equally."

The defendant was further bound, "to use such means and care generally as will tend to avoid accidents of any kind."[1]

The plaintiff further alleged that the employee of plaintiff was seriously injured while working on defendant's property; and that the injury was directly caused by the negligence of the defendant in operating and maintaining the steps and platform, upon which the employee fell, in a dangerous and hazardous condition; and that the plaintiff, being under the Federal Employers' Liability Act, was liable for such injuries to its employee, because it failed to furnish the employee a safe place in which to work.[2]

After the defendant refused to accept any liability, and denied the indemnifying contract as applied to this particular accident, the plaintiff effected a settlement of the claim for $20,445.00.

The defendant in its answer denied negligence on its part and alleged that the plaintiff in paying and settling for the injury was a mere volunteer, and as such is not entitled to reimbursement from the defendant.

At the close of all the evidence the court submitted to the jury the following "Special Interrogatories" and received the following answers:

(1) Do you find that the plaintiff, Rock Island, was guilty of negligence in not providing Paul Fruit [employee] with a safe place in which to work, and that such negligence was a proximate cause of Paul Fruit's injury?

Answer: NO

(2) Do you find as a matter of fact that the defendant, Dobry Flour Mill, was negligent and that such negligence was a proximate cause of Paul Fruit's injury?

Answer: NO

(3) Do you find that Paul Fruit was guilty of negligence and that such negligence was a proximate cause of his own injury?

Answer: NO

(4) Do you believe the plaintiff, Rock Island, acted reasonably and in good faith in determining the sum of $20,445.00 as fair and just compensation to Paul Fruit for damages?

Answer: YES

(5) From all the evidence which has been introduced, what do you find to be the amount of damage suffered by Paul

---

1. The court does not believe this provision enlarges perceptibly upon the duty owed by the defendant to refrain from negligent acts or omissions. It is primarily a case of whether the defendant has been guilty of negligence rather than whether this specific contractual provision gives rise to an additional right upon which the plaintiff may call. Cf. Cities Service Oil Co. v. Harvey, 10 Cir., 1945, 148 F.2d 780, 783 wherein Judge Murrah said: "Under our contract the implied obligation as pleaded was to perform the work in a workmanlike manner, but the contractual obligation to perform the work in a workmanlike manner imposed no greater duty than to exercise ordinary care under the circumstances. Consequently, if Plummer was negligent, the performance was defective, if not, it was workmanlike, and whether considered as sounding in contract or tort, the judgment of the trial court must be sustained."

2. 45 U.S.C.A. § 51.

Fruit as a result of the accident in question?

Answer: $20,445.00

As a result of these special findings by the jury, each party has now moved for judgment in its favor.

The plaintiff takes the position that inasmuch as the jury found the settlement was reasonable and in good faith that under the indemnifying contract they had a right to go ahead and settle the claim, when the defendant refused to enter into the negotiations, and that the plaintiff was not required to wait to be sued, risking a judgment much larger in amount than the settlement figure, and that the finding now of non-liability does not affect its right to recover.

The defendant asserts that it in no way can be considered liable to the plaintiff inasmuch as the jury expressly found that both the plaintiff and defendant were free from negligence. Thus, the defendant requests the court to rule that the plaintiff was a mere volunteer in settling with its employee and to enter judgment for the defendant.

■ Obviously, an indemnitor cannot be looked to for reimbursement where an indemnitee has voluntarily paid out a sum of money not within the purview of the indemnifying agreement. However, the terms of each agreement must be carefully scrutinized in order to determine just what the contracting parties intended to cover before the question of "voluntary payment" can be ruled upon.

■ Generally, there are two distinct types of indemnifying contracts.

(1) Where the indemnitor accepts absolute liability as illustrated by the insurer-insured relationship wherein the indemnitor personally has no control directly over whether or not liability will be created, but for a specific consideration agrees to assume liability up to a specific amount for a certain class of contingent liabilities.

(2) Where the indemnitor, as partial consideration in an agreement, specifically agrees to stand good for liabilities which may arise as a direct result of its own conduct.

■ Illustrative of the first type is the case of St. Louis Dressed Beef & Provision Company v. Maryland Casualty,[3] wherein the indemnitor issues a policy of liability insurance containing a contractual provision to defend the insured in the event of suit. In cases of this character there is no thought that the indemnitor may be guilty of negligence. As so often expressed, "the insured accepts a sum-certain small loss, in the form of an insurance premium, rather than risk an uncertain large loss." Logically, where the insurer repudiates any liability under the policy and breaches his express contractual promise to defend the insured, such promise being a part of the consideration of the policy agreement, the insured has the right to make a good faith settlement for a reasonable amount. Even in such instances, however, it is incumbent upon the insured to establish as a matter of law that the suffered loss was a loss of a character covered by the terms of the liability policy. This same principle was applied in Traders & General Ins. Co. v. Rudco Oil & Gas Co.[4] wherein the insured was charged with

3. 1905, 201 U.S. 173, 26 S.Ct. 400, 50 L. Ed. 712.

4. 10 Cir., 1942, 129 F.2d 621, 142 A.L.R. 799. See Continental Casualty Co. v. Shankel, 10 Cir., 1937, 88 F.2d 819. Accord, Johns & Knuth Co. v. American Indemnity Co., 1923, 182 Wis. 556, 196 N. W. 569. At p. 572 the court said: "Long prior to such settlements, however, the indemnity company had deliberately breached its corresponding obligation in that regard by repudiating any liability

whatsoever and expressly refusing, upon demand, to assume the defense of the actions brought against the assured. Having taken such position, it surely cannot now be heard to say that the assured, instead of making a reasonable and fair settlement (and it is conceded that such were the nature of the settlements) should have permitted such claims to proceed to judgments and thereby incur additional expense and possibly much larger liability for damages. [Citing cases.]"

having negligently operated one of its leases. When the insurer refused to step in, the insured effected a settlement. In upholding the insured's right to recover from the insurer, Judge Murrah said:[5]

"* * * If, however, the insurer denies liability for the asserted claims and refuses to defend in the name of the assured or to acknowledge any duty or obligation arising under the contract of insurance, the assured is released from the covenant against settlement or interference and may assume control of the litigation, defend in his own name, or effect a reasonable and prudent settlement of the claims, or suits, and thereafter assert his rights under the policy; in which event, his right to recover against the insurer is generally measured by the coverage under the policy and the reasonableness of the settlement. [Citing cases.]"

In concluding, Judge Murrah went on to say:

"We recognize the evils inherent in any rule which permits, or justifies, a compromise or settlement by the assured without the consent of the insurer, yet we are unwilling to say that in no circumstances is such conduct justified.

"Under the peculiar facts, shown here to exist, we hold that the course of conduct pursued by the Traders & General does not square with the standard of good faith and fair dealing which underlies the contract between the parties, and it is therefore without standing to assert its only defense."

The case at bar clearly falls within the second group previously mentioned wherein the liability of the indemnitor is strictly and specifically limited to its own conduct.

In reviewing several cases involving spur track indemnifying clauses similar to the one under consideration the annotator at 20 A.L.R.2d 726 makes this general remark:

"It appears to be well settled that a clause in a spur track agreement indemnifying a railroad for liability for losses sustained in connection with the spur does not cover payments made by the railroad voluntarily and without legal obligation."

Although concededly an accurate statement of the law, the facts in each individual cause must be closely analyzed in connection with the express wording of the indemnifying agreement to determine just when the payment is "voluntary and without legal obligation."

A case somewhat analogous to the case at bar is Oregon-Washington R. & Nav. Co. v. Washington Tire & Rubber Co.[6] wherein the court held the payment "voluntary" where the railroad settled with its brakeman for injuries sustained in an accident caused solely by the indemnitor's negligence in erecting an obstruction too close to the spur track. Since the railroad was found entirely free from negligence the court ruled that inasmuch as the railroad was under no legal liability to pay it must be considered a "volunteer", and the good faith and reasonableness of amount became immaterial.

A slight modification of the above mentioned principle appears in United States[7]

---

5. 129 F.2d at page 626.

6. 1923, 126 Wash. 565, 219 P. 9.
See also Lehigh Valley R. Co. v. Hertz, Pa., 1944, 38 Luz.Leg.Reg. 5 wherein the railroad and an industry, for which the railroad had erected a spur track, had an agreement whereby the industry would save the railroad harmless for loss from damage or injury to the person or property of the parties and their employees from an "act or omission" of the industry (a provision almost identical with the one involved in the case at bar). The

court held that the railroad was obligated to prove that the amount paid in settlement of the claim to its employee who was caught between the walls of industry's warehouse and the engine was reasonable in amount, *and that the railroad assumed the risk of proving the actionable facts before it could recover under the indemnity agreement.* (Emphasis supplied.) (A resume of this case is reported at 20 A.L.R.2d 726.)

7. 10 Cir., 1948, 171 F.2d 377.

v. Chicago, R. I. & P. Ry. Co. Where a brakeman, injured when his foot was caught between the floor board of an engine and a pile of blacktop material lying immediately adjacent to railway track within a military reservation in Oklahoma, could have maintained action against the United States for personal injuries sustained as a result of negligence of United States, the railroad as subrogee or indemnitee under him could maintain action against the United States. Judge Bratton said:[8]

> "We entertain no doubt that Eitel could have maintained an action against the United States for damages for the personal injury which he sustained as the result of negligence on the part of the United States in permitting the hardened material to remain immediately adjacent to the railway track, and therefore the railway company as subrogee or indemnitee under him could likewise maintain this action."

This case is distinguishable from the case at bar inasmuch as in the instant case both the indemnitee and the indemnitor were found as a matter of fact free from negligence.

In Missouri Pac. R. Co. v. Sonken-Galamba Corp.[9] in a suit, by railway company against a company, for which a private tract was installed, to recover sum paid by plaintiff to foreign railway for cars destroyed on private track by fire of unknown origin, which also destroyed defendant's plant, a provision in spur track agreement by which defendant agreed to indemnify plaintiff against all liability for fire occurring on premises, held to amount to an agreement to indemnify *only* where plaintiff was *legally liable* to the owner, and not to apply to a case in which plaintiff paid pursuant to American Railway Association rule which provided that, "settlement for car destroyed on private track shall be assumed by company delivering car". 274 S.W. at page 932 the court said:

> "We cannot construe said section 11 to mean other than that defendants agreed to indemnify plaintiff only for money paid the owners of the cars, in

case plaintiff is legally liable therefor. In other words, *the indemnity attaches only where plaintiff would be liable to the owner of the property for its destruction by fire while on the premises of defendant, and that defendant would hold plaintiff harmless for any such loss for which plaintiff would be liable as a matter of law. This we hold to be the meaning of the indemnity contract herein. This court held, and the rule is well settled, that an indemnitee cannot recover beyond the terms of the indemnity contract, and that a voluntary payment made by the indemnitee, without regard to its legal liability, is not recoverable thereunder.* * * *

> "It is urged that this rule, in effect, is a contract between the members of the association, and each is thereby obligated to reimburse the other for cars destroyed or damaged while under control of another member of the association. Whether this rule arises to the dignity of a contract is not material, in our view. If it were a binding contract, there would yet remain the question of a legal liability attaching. It cannot be rightfully claimed, we think, that the owner of the destroyed cars should be reimbursed willy-nilly for the loss of the cars, unless legal liability be shown. The rule does not impose a blanket liability on the railway company placing the cars on the track, or increase the liability which the rules of law impose."

This case implies the need of the indemnitee to establish legal liability in order to escape the position of a "volunteer", and although the case is distinguishable from the instant case, the logic of the opinion is inescapable.

The indemnifying contract in the case at bar can only be interpreted as a promise on the part of the defendant to hold the plaintiff railroad harmless for any amount which becomes owed as a result of the acts or omissions of the defendant in the operation and maintenance of the spur track property.

---

**8.** 171 F.2d at p. 379.

**9.** 1925, 220 Mo.App. 462, 274 S.W. 930.

502

It must be emphasized that the contract here involved is not one for absolute indemnity. Liability is contingent upon improper acts or omissions of the indemnitor.

The Oregon case of Booth-Kelly Lumber Co. v. Southern Pacific Co.[10] again defines by implication the need of establishing negligent acts or omissions, or a breach of an express contractual provision which directly results in damage. In this case, which involved an indemnifying clause identical with the one before us, the railroad was permitted to recover under its contract for the payment of a judgment to an employee who received injuries as a result of the defendant leaving a cart too near the track in violation of an express provision of the contract. Thus whether the defendant be charged with a negligent act or omission, or a specific breach of contract, in either instance the act of the defendant must result in the establishing of a legal liability for which the indemnitee must originally stand good. Such being the case, naturally the indemnitor must reimburse the indemnitee whether upon the theory of breach of a specific contract provision or because of negligent acts or omissions falling under the more comprehensive indemnifying clause.

Another case illustrating the establishing of liability under a violation of a specific and well defined contractual term, rather than predicating recovery upon proof of negligence is New Orleans Great Northern R. Co. v. S. T. Alcus & Co., Limited [11] wherein a mill company contracted to protect and indemnify a railroad against loss, damage, and expense in consequence of injury to persons or property by reason of or growing out of location of any buildings, structures, or fixtures erected in dangerous proximity to tracks. The railroad was found entitled to indemnity where it paid a brakeman for injury he received in catching his foot between skidway and track as a result of judgment against it in a former trial. Once again, whether the indemnitor be found liable upon the theory of breach of contract or negligence, loss and liability of the indemnitee as a result of the act of the indemnitor must be fixed.

The plaintiff in the case at bar relies heavily upon the Kentucky case of Luton Mining Co. v. Louisville & N. R. Co.[12] wherein the court held that where the mining company [indemnitor] denied liability for death of railroad's employee fatally injured on company's switch track under contract of indemnity the railroad was justified in making a reasonable settlement of death claim and was not a "volunteer" in so doing and was entitled to reimbursement from the indemnitor.

One distinction should be made between the Luton Mining Co. case wherein the *indemnitor agreed to hold harmless the railroad company from claims and demands arising directly or indirectly out of the maintenance of said tracks or the operation of rolling stock thereon,* and the instant case wherein the *indemnitor agreed to hold the railroad company harmless for injury from any act or omission of the industry.* The former more nearly approaches a promise of absolute indemnity thus placing it more nearly in the class of an insurer-insured relationship, whereas the latter specifically restricts liability to injury resulting from "any act or omission" of the indemnitor-defendant.

However, insofar as this case may be interpreted to stand for the principle that an indemnitee, such as the one here involved, after notice to the indemnitor, may settle with its employee and then hold the

10. 9 Cir., 1950, 183 F.2d 902, 20 A.L.R.2d 695.

11. 1925, 159 La. 36, 105 So. 91.
 See John P. Gorman Coal Co. v. Louisville & N. R. Co., 1926, 213 Ky. 551, 281 S.W. 487 where the court held that an obligation by defendant, under contract to hold plaintiff carrier harmless from claims due to defendant's failure to keep spur tracks clear, is an ab-

solute one, not conditional on defendant being negligent, and thus petition by plaintiff for indemnity for damages recovered from plaintiff for injuries to its employees from collision with push car placed too near tracks was not defective as failing to allege negligence by defendant.

12. 1938, 276 Ky. 321, 123 S.W.2d 1055.

indemnitor responsible without first establishing legal liability under the agreement, this court does not believe such to represent the Oklahoma view, which of course is the controlling law in this case.[13]

Unquestionably, once the indemnitee establishes liability under the indemnifying contract and shows the settlement was in good faith for a reasonable amount the indemnitor must stand good for the amount paid out in settlement.

Although no notice was given in The Toledo case, the language in that case illustrates the correct rule:[14]

"A claim for indemnity, however, requires that an actual liability be sustained by the indemnitee, and if he settles a claim without a determination of the rights in question, he bears the risk of proving an actual liability in the action over for indemnity. [Citing cases.] In failing to establish a lack of due diligence the charterer failed to establish a right to indemnity based on an actual liability on its part. The court below was clearly correct in denying this claim for damages on the ground that the charterer acted as a volunteer."

This same principle is set forth in Frank Martz Coach Co., Inc., v. Hudson Bus Transp. Co., Inc.[15] where the court held that the settlement of passengers' claims by motor carrier, made voluntarily in the sense that claims were not reduced to judgments, did not defeat carrier's right to indemnification from driver from whose *negligence* claims arose, but placed upon the carrier the burden of proving that it was liable, that settlement was reasonable, and that liability was of such a character that, in spite of it, carrier was entitled to recover over against the driver. At page 491 of 44 A.2d, the court said:

"Although defendants do not raise the point in their brief, it may be well to note that even though the settlement of the passengers' claims by the plaintiff appears to have been voluntary in the sense that the claims were not reduced to judgments, nevertheless, that fact does not defeat the right to indemnification. *Voluntary payment merely varies the degree of proof needed to establish the liability of the indemnitor by casting upon the indemnitee the burden of proving* (1) *that he was liable;* (2) *that the settlement was reasonable; and* (3) *that his liability was of such a character that, in spite of it, he may recover over against the defendant.* * * *"
(Emphasis supplied.)

In the Oklahoma case of Magnolia Petroleum Co. v. Howard[16] the plaintiff sued to recover payments made in settlement of death actions arising out of explosion of contaminated kerosene sold by the consignee defendant to a retail dealer who in turn sold it to the decedents. The agreement provided:

"The consignee [defendant] assumes all liability for loss and damage of whatever character sustained by consignor or third parties, resulting from the acts of consignee or his employees and servants."

Although no notice prior to settlement apparently was given in this case the construction of the court of this type of indemnity which is not absolute indicates the need of clearly establishing the breach of a duty owed by the indemnitor under the terms of the agreement. In this case the plaintiff could not recover inasmuch as the jury found the consignee-defendant free from negligence.

Another Oklahoma case of Missouri, K. & T. Ry. Co. v. Ellis[17] is helpful. In this case the defendant contracted with the plaintiff railroad to build for it a depot and to hold it harmless from all damages to any one arising out of the carrying out of such building contract. During the

---

13. Standard Ins. Co. of N. Y. v. Ashland Oil & Refining Co., 10 Cir., 1950, 186 F. 2d 44; Erie Railroad Co. v. Tompkins, 1938, 304 U.S. 64, 82 L.Ed. 1188, 58 S. Ct. 817.

14. 2 Cir., 1941, 122 F.2d 255, 257.

15. 1945, 44 A.2d 488, 23 N.J.Misc. 342.

16. 10 Cir., 1951, 193 F.2d 269.

17. 1920, 78 Okl. 150, 189 P. 363.

erection of the building, a passenger on the plaintiff's train alighted at nighttime therefrom, and, while walking across the depot premises in the passageway fell over a piece of timber lying in the passageway and was injured. The passenger instituted suit against the plaintiff railroad charging negligence in leaving the timber lying in the passageway and in its failing to light up the depot premises. The contractor and his sureties failed to defend the suit upon request by the railroad. The case went to trial and the passenger obtained a verdict against the railroad company. Although the ruling of the Oklahoma Supreme Court went to the point of res judicata which is not relevant to the instant case, the unmistakable inference to be drawn from this decision is that even with notice having been given coupled with a final judgment rendered against the indemnitee railroad, the railroad still has the burden of proving that the indemnitor breached its indemnity agreement before responsibility attaches.

 Under a general clause of indemnity such as here involved the sending or not sending of notice has no effect upon the substantive legal rights between the parties.[18] Naturally, you must distinguish between the situation involved here where no reference is made to notice and one wherein the contract expressly requires notice, or where one of the express covenants in the agreement calls for the indemnitor to step in and defend any action against the indemnitee in a specified class of cases such as was in view in the Traders & General Ins. Co. case.

 Also, where liability is clear and a defense to the suit would be unavailing, the indemnitee may discharge a claim or demand against him, with or without notice unless specifically required under the contract, and bring suit for indemnity without waiting for the suit against him to go to trial and judgment.[19] However, the indemnitee takes the risk of establishing the facts on which the indemnitor's liability depends together with the good faith and reasonableness of the settlement.

In the instant case in view of the jury's finding No. (4) that the settlement made by the Rock Island with its employee was in good faith and for a reasonable amount the plaintiff needed only to establish the indemnitor's liability. If the jury had found the plaintiff and defendant both guilty of negligence resulting in the injury in question, the plaintiff would be entitled to re-

18. The Oklahoma statute dealing with notice to the indemnitor provides: "* * * * 4. The person indemnifying is bound, on request of the person indemnified, to defend actions or proceedings brought against the latter in respect to the matters embraced by the indemnity; but the person indemnified has the right to conduct such defense, if he chooses to do so. 5. If, after request, the person indemnifying neglects to defend the person indemnified, a recovery against the latter, suffered by him in good faith, is conclusive in his favor against the former." 15 Okl.Stat.Ann. § 427.

The Oklahoma Supreme Court in construing these provisions said: "This statute, in the absence of a contractual provision to the contrary, makes the recovery against the person indemnified conclusive against the indemnitor. But note should be taken that it is the recovery which is conclusive, if the person is in fact indemnified and the recovery does not in itself conclusively establish that the person claiming to be indemnified is in fact indemnified. In other words, the question of whether the party against whom recovery is had is indemnified is still open to dispute, notwithstanding the recovery. [Citing cases.]" United States Fidelity & Guar. Co. v. Dawson Prod. Co., 1937, 180 Okl. 119, 68 P.2d 105, 106.

19. Minton v. American Surety Co. of New York, 1939, 184 Okl. 602, 88 P.2d 883, 886, the court said: "Under the provisions of section 9654, O.S.1931, [now 1951] 15 Okl.St.Ann. § 427, relating to indemnity, the indemnitee is entitled to recover upon becoming liable, and there is no requirement that such liability shall be judicially determined as a prerequisite to an action upon the indemnifying contract. 'Where liability is clear and defense to a suit to declare the same would be unavailing, the indemnitee may discharge a claim or demand against him and institute action upon indemnity without adjudication as a condition precedent.' Anderson v. Reed, 133 Okl. 23, 270 P. 854." Also, see 42 C.J.S., Indemnity § 14.

cover the amount for which it settled the claim. It is conceivable, although not necessary for the court to decide, that if the jury had just found the indemnitor guilty of negligence that the plaintiff would be entitled to recover, either under the express wording of the agreement or upon some theory of subrogation.[20]

However, where it is established as a matter of fact that neither the indemnitor nor the indemnitee were guilty of negligence, there is no basis upon which the indemnitor can be found liable for a sum of money voluntarily paid out by the indemnitee on a claim not falling within the scope of the indemnifying agreement, merely because the indemnitor rightfully refused to take part in a settlement negotiation in which it had no interest or legal liability.

Judgment should be entered for the defendant.

Counsel will submit a journal entry in conformity with this opinion within ten days.

---

20. See United States v. Chicago, R. I. & P. Ry. Co. footnote 7 supra. Here a recovery was permitted against the United States where it was expressly found that the railroad was free from negligence.