Dear Administrator Nance
¶ 0 This office has received your letter asking for an official Opinion addressing, in effect, the following question:
Is a plan of health or dental insurance, which providessecurity for reimbursement against loss, and which, eitherdirectly or through contracting arrangements with health ordental care providers, provides health and/or dental services tomembers enrolled in the plan, an indemnity plan pursuant to 74O.S.Supp. 1995, § 1365[74-1365](A)(12)?
¶ 1 In essence, your question is whether the addition of managed health care procedures changes the character of an indemnity plan into something else, such as an HMO. In order to answer your question a review of the relevant statutes is necessary.
¶ 2 In 74 O.S.Supp. 1995, § 1364[74-1364](A), the Oklahoma Legislature provides for the creation of the Oklahoma State Employees Benefits Council ("Council"). The duties of the Council include the purchase of health care benefits for state employees. Id.
Specifically, 74 O.S.Supp. 1995, § 1365[74-1365](A)(12) directs the Council to act as follows:
 The Oklahoma State Employees Benefits Council shall have the following duties, responsibilities and authority with respect to the administration of the plan:
. . . .
 12. To purchase any insurance deemed necessary for providing benefits under the plan,[1] provided that the only indemnity plan selected by the Council shall be the indemnity plan offered by the Board, and to transfer to the Board[2] such funds as may be approved for a participant electing a benefit plan offered by the Board[.]
74 O.S.Supp. 1995, § 1365[74-1365](A) (emphasis added).
 Indemnity Plan Concept
¶ 3 Thus, 74 O.S.Supp. 1995, § 1365[74-1365](A)(12) directs the Council to purchase any insurance[3] deemed necessary to provide benefits under the plan. The only indemnity plan selected by the Council shall be the indemnity plan offered by the Board.
¶ 4 "The fundamental rule of statutory construction is to ascertain and, if possible, give effect to the intention and purpose of the Legislature as expressed in the statute." Jacksonv. Independent School Dist. No. 16, 648 P.2d 26, 29 (Okla. 1982). In order to ascertain the legislative intent behind Section 1365(A)(12) of Title 74, one must first define the term "indemnity."
¶ 5 "Indemnity" is defined by the Legislature, for the purpose of contract law, as "a contract by which one engages to save another from a legal consequence of the conduct of one of the parties, or of some other person." 15 O.S. 1991, § 421[15-421]. An example of an indemnifying contract is one in which "the indemnitor accepts absolute liability as illustrated by the insurer-insured relationship wherein the indemnitor [insurer] . . . for a specific consideration agrees to assume liability up to a specific amount for a certain class of contingent liabilities."Chicago R.I. P.R. Co. v. Dobry Flour Mills, 111 F. Supp. 496,499 (W.D.Okla. 1953). Simply stated, "[a]n indemnity insurance contract is characterized by an agreement to reimburse the insured for the particular loss sustained up to the amount of the policy limits." Cunningham v. Metropolitan Life Ins. Co.,342 N.W.2d 60, 64 (Wis.Ct.App. 1983).
¶ 6 In the present context, an indemnity plan is one in which an insured may visit a healthcare provider allowed under the policy. The insured is directly responsible to pay the healthcare provider and under the terms of the policy be reimbursed by the insurer, in this case, the Board. Such plans have a stark distinction from the prepaid healthcare plans such as health maintenance organizations and other prepaid providers.
 The HMO Concept
¶ 7 "A health maintenance organization (HMO) has been defined `as a legal entity through which physicians and other health care professionals agree to deliver comprehensive health care services to a defined voluntarily enrolled membership for a fixed fee paid in advance of the [date] such services [are rendered], as distinguished from traditional fee-for-service practice.'" Earlene P. Weiner, Managed Health Care: HMO Corporate Liability,Independent Contractors, and the Ostensible Agency Doctrine, 15 J. Corp. L. 535, 539 (1990) (citing Lemkin, Alternative Forms ofHealth Care Delivery: HMOs, IPAs and PPOs, in Health Care 239 (Practising Law Inst. Course Handbook Ser. No. 371, 1985)). It is not the fixed, prepaid premium that distinguishes HMOs from traditional fee-for-service health insurance.[4] The distinguishing factor is how payment is made to the healthcare provider. Under the traditional fee-for-service type of health insurance (i.e., indemnity plan), the insurer pays the healthcare provider directly, and payment is made only when the insured uses a health service. Bernard T. Ferrari Thomas H. Sponsler, Health Maintenance Organizations and the Specter ofAntitrust Law, 31 Loy. L. Rev. 797, 799 (1986).
¶ 8 Under the HMO system, the HMO and healthcare provider maintain financial and organizational ties. First, the enrollee (i.e., insured) prepays the HMO a fixed premium. The HMO then pays the healthcare provider a fixed sum for each enrollee every month regardless of whether or not the enrollee uses the provider's services. In return for these monthly payments, the healthcare provider must render whatever healthcare services the enrollee requires. Bernard T. Ferrari Thomas H. Sponsler,Health Maintenance Organizations and the Specter of AntitrustLaw, 31 Loy. L. Rev. 797, 799 (1986). Thus, the income of the healthcare provider is unrelated to the quantity of services provided. In the traditional payment-for-service-rendered healthcare plan, however, the healthcare provider's income increases as more healthcare services are rendered. Id. As defined in 63 O.S.Supp. 1995, § 2503[63-2503](1), an HMO provides "either directly or through arrangements with others, comprehensive health services to members enrolled with the organization on a fixed prepayment basis." This is a common thread that weaves HMOs and other prepaid plans together. These healthcare providers agree to provide unlimited service to enrollees for a fixed amount which is paid in advance.[5]
This clearly sets prepaid plans apart from indemnity plans.
¶ 9 As evidenced by the plain language of 74 O.S.Supp. 1995, §1365[74-1365](A)(12), the State of Oklahoma has limited the availability of indemnity plans for its state and education employees to the indemnity plan established and maintained by the Oklahoma State and Education Employees Group Insurance Board.
¶ 10 Your question is essentially whether a plan of health or dental insurance which implements various managed health care[6] procedures, is transformed into an HMO or prepaid plan. Such procedures may include, for example, contracting with specific providers (i.e., a network of providers) who will render services to insureds for agreed-to maximum rates; if the insured receives services from a non-network provider, the insured is responsible for anything over the maximum rates agreed to by the network of providers. The mere fact that an indemnity plan implements a procedure such as this does not change its character. "The character of insurance is not to be determined by the character of the company writing it, the nomenclature used, or the manner or mode of affording insurance, but by the nature of the contract actually entered into or issued." Couch on Insurance 2d (Rev. ed. § 1:12). If the contract between the insurer and the insured provides for reimbursement against loss, and if payment is made by the insurer to the healthcare provider only when the insured receives service, it is an indemnity plan.
¶ 11 It is, therefore, the official Opinion of the AttorneyGeneral that:
 A plan of health or dental insurance which provides:
 1. Reimbursement against loss;
 2. Payment to the healthcare provider only when the insureduses a health service; and
 3. Either directly or through contracting arrangements withhealth and dental care providers, provides managed andcomprehensive health and dental services to members enrolled inthe plan, is an indemnity plan pursuant to 74 O.S.Supp. 1995, §1365(A)(12).
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
JOSEPH L. McCORMICK IV ASSISTANT ATTORNEY GENERAL
[1] "Plan" means the flexible benefits plan authorized pursuant to the State Employees Flexible Benefits Act. 74 O.S.Supp. 1995,§ 1363[74-1363](17).
[2] "Board" means the State and Education Employees Group Insurance Board, as created by the State and Education Employees Group Insurance Act. 74 O.S.Supp. 1995, § 1363[74-1363](6). The Board actually administers and manages the group insurance plans. 74O.S.Supp. 1995, § 1306[74-1306](1).
[3] Title 36 O.S. 1991, § 102[36-102] defines "insurance" as "a contract whereby one undertakes to indemnify another or to pay a specified amount upon determinable contingencies." Insurance is thus a contract of indemnity.
[4] Both HMOs and traditional health insurance providers require that fixed premiums be paid in advance of the use of a health care service. Bernard T. Ferrari Thomas H. Sponsler,Health Maintenance Organizations and the Specter of AntitrustLaw, 31 Loy. L. Rev. 797, 799 (1986).
[5] Some prepaid plans have a reimbursement component for members who receive covered services through noncontracting providers. 63 O.S.Supp. 1995, § 2503[63-2503](7)(b). The rationale for this is to allow eligible members of the plan to receive medical or dental treatment outside of the plan should it become necessary. This does not however, convert a prepaid plan to an indemnity plan since the plan itself requires prepayment to the healthcare provider.
[6] "Managed health care means `any health care arrangement that includes cost containment strategies, risk allocation among insurance entities, providers and employers, and claims administration and reporting.'" Earlene P. Weiner, ManagedHealth Care: HMO Corporate Liability, Independent Contractors,and the Ostensible Agency Doctrine, 15 J. Corp. L. 535, 539 (1990) (citing Bouey and Corcoran, "Managed Care Diversificationand New Products," in Managed Health Care 1988, 11 (Practising Law Inst. Course Handbook Ser. No. 471, 1988)).